Hall, et al. v. Bank of America, N. A. et al.,
United States District Court for Southern
District of Florida

FILED by _____ D.C.

AUG 2 2 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**Case no. 12-cv-22700**

| | |
|---|---|
| To: OPT OUT w/a little History | From: Nathaniel M. Adderley Sr. |
| Fax: | Pages: Several |
| Phone: | Date: 8/13/14 |
| Re: Clerk of the Court Miami, Florida 33128 | cc: Settlement Administrator Portland, Oregon 97208-4540 |

Comments:  *In lieu of my plight to get even with the defendant I opt out of this class action suit because over the last seven to eight years does not amount nowhere near the damages and right infringements I have suffered on the account of the defendants negligence.? Once I find an attorney lt. governor ombudsman, congressman, consumer affairs, district attorney, news channel, CFPB, FTC, US Department of Justice someone who will respond with my decision to take legal actions against the defendant and their shareholders I will go forward.*

*V/R,*

Mr. N. M. Adderley Sr.
300 Trinity Three Road
Irmo, SC 29063
803-244-9303

# *Hall, et al. v. Bank of America, N.A., et al.,*
## Case No. 12-cv-22700-FAM

### *United States District Court for the Southern District of Florida*

**If you were charged by Bank of America or Countrywide Home Loans for a lender-placed hazard insurance policy issued between January 1, 2008 and February 3, 2014 for your residential property, and you paid all or a portion of the premiums for that policy to Bank of America or Countrywide at that time, you could receive a payment from a class action settlement.**

**If you were charged by Bank of America or Countrywide Home Loans for a lender-placed hazard insurance policy issued between January 1, 2008 and February 3, 2014 for your residential property, and you did not pay and still owe the premiums for that policy, you could receive a payment or a credit towards what you owe Bank of America.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- If you were charged by Bank of America, N.A., Banc of America Insurance Services, Inc., BAC Home Loans Servicing, LP, or Countrywide Home Loans Servicing, LP (collectively "Bank of America") a premium for lender-placed hazard insurance coverage issued by Balboa Insurance Company, Meritplan Insurance Company, Newport Insurance Company, QBE Insurance Corporation, QBE Specialty Insurance Company, Praetorian Insurance Company, or one of their affiliates (collectively, "QBE") on your residential property, this Settlement will provide you with an opportunity to claim benefits in the form of either a check payment or a credit towards what you currently owe Bank of America.

- The Class Period begins on January 1, 2008 and ends on February 3, 2014.

- If you were charged for a hazard LPI Policy that was issued between these dates, subject to the provisions of this Notice and the Settlement, you may make a claim to receive benefits pursuant to this Settlement.

- This Notice will explain what the class action lawsuit was about, what the Settlement will be if it is approved by the Court, whether you qualify to submit a claim for a payment by check or a credit based on the Settlement, and what to do if you want to: (i) submit a claim; or (ii) object to the Settlement; or (iii) not participate in the Settlement and instead "opt out" of the class action. This Notice also will tell you how to get more information if you want it.

- If you decide to submit a claim, you will need to follow the Instructions for the Class Action Claim Form, and fill out the Claim Form sent to you with this Notice. Everyone submitting a Claim Form must answer the questions on the Claim Form truthfully, and must affirm the statements in the Claim Form under penalty of perjury. Some Claimants also must verify their identity.

- Settlement Class Members who paid for all or a portion of the charges for an LPI Policy on their property and who submit a timely, valid, and verified Claim Form will receive a settlement payment via check in the amount described in Section 7 below, if: (i) they do not have a mortgage escrow account; or (ii) their escrow payments are current; or (iii) their mortgage loan is no longer serviced by Bank of America. If not, Bank of America shall have the option, at its discretion, of making the settlement payment either via check or by account credit, in the amount described in Section 7 below.

- Settlement Class Members who were charged but did not pay for, and who still owe, the charges for an LPI Policy on their property and who submit a timely, valid, and verified Claim Form will receive a settlement payment either via check or by account credit, at Bank of America's sole option, in the amount described in Question 7 below.

**YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DON'T ACT. PLEASE READ THIS NOTICE CAREFULLY, AND OBTAIN MORE INFORMATION IF YOU NEED IT. THE NOTICE WILL TELL YOU HOW TO OBTAIN THAT INFORMATION.**

Hall v. Bank of America, N.A.
Settlement Administrator
P.O. Box 4540
Portland, OR 97208-4540

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
TWIN CITIES, MN
PERMIT NO. 600F

# <u>Legal Notice about a Class Action Settlement.</u>

# <u>Notificación Legal sobre un Acuerdo de Demanda Colectiva.</u>

      830600420897

00041-001811  *******AUTO**SCH 5-DIGIT 29063
Nathaniel Adderley
300 Trinity Three Rd
Irmo SC  29063-2260

### SETTLEMENT CLASS MEMBERSHIP

## 5.  WHO IS A SETTLEMENT CLASS MEMBER?

To see if you will be affected by this class action, you first have to determine if you are a member of the Settlement Class. The "Settlement Class" shall be as follows:

All borrowers who had mortgage loans, home equity loans, or home equity lines of credit serviced by Bank of America, N.A. or BAC Home Loans Servicing, LP, (formerly known as Countrywide Home Loans Servicing, L.P.) who were charged a premium for lender-placed hazard insurance[1] coverage issued by Balboa Insurance Company, Meritplan Insurance Company, Newport Insurance Company, QBE Insurance Corporation, QBE Specialty Insurance Company, Praetorian Insurance Company, or one of their affiliates within the Class Period.  Class Members will have the right to opt out of the Settlement Agreement consistent with the terms of Fed. R. Civ. P. 23(b)(3).

The "Settlement Class Period" shall be from January 1, 2008 through February 3, 2014.

Excluded from the Class are: (i) individuals who are or were during the Class Period officers, directors, or employees of the Defendants or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers whose LPI Policy was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower; (iv) all borrowers who file a timely and proper request to be excluded from the Class; and (v) any borrowers who have settled or otherwise released any LPI claims, including but not limited to all borrowers who participated as settlement class members in *Farmer v. Bank of America, N.A. and BAC Home Loans Servicing, L.P.*, Civil No. 5:11-CV-00935-OLG (W.D. Tex.).

## 6.  WHAT IF I AM NOT SURE WHETHER I AM INCLUDED IN THE SETTLEMENT CLASS?

If you are not sure whether you are included in the Settlement Class, or you have questions about the case, you may call the toll free number, 1-888-286-8194, or visit the Settlement Website at www.HallSettlementInfo.com.

### THE SETTLEMENT TERMS AND BENEFITS

## 7.  WHAT ARE THE TERMS OF THE SETTLEMENT?

Defendants have agreed to provide payments or credits as follows:

If your mortgage servicer was Bank of America, N.A., and you had LPI issued, or "placed" between January 1, 2008 and December 31, 2009 by Bank of America, you will receive an amount equal to 11% of the net written premium charged.

If your mortgage servicer was Countrywide Home Loans, and you had LPI placed between January 1, 2008 and December 31, 2009 by Countrywide Home Loans or BAC Home Loans Servicing, LP, you will receive an amount equal to 6.5% of the net written premium charged.

If you had LPI placed between January 1, 2010 and February 3, 2014 by Bank of America, you will receive an amount equal to 5% of the net written premium charged.

Each Settlement Class Member must submit a valid and properly completed Claim Form, including for some claimants, providing a form of verification of their identity.

The net written premium is the amount of the LPI premium minus any refunds.

As described in further detail in response to Question 9, whether a Settlement Class Member is eligible to receive a payment or an account credit (toward what the Settlement Class Member owes the Bank of America Defendants) depends on whether his or her mortgage loan is still serviced by Bank of America, whether he or she paid the premiums charged by the Bank of America Defendants for the LPI Policy or he or she did not pay and still owes those premiums to the Bank of America Defendants, and whether his or her escrow payments are current.  Each Settlement Class Member must submit a Claim Form to be eligible to receive these benefits.  The total cash benefit available to Settlement Class Members is approximately $228 million.  Defendants also have agreed to additional prospective relief from which you may benefit.  The Settlement benefits are described in further detail in the Settlement Agreement, which is available at www.HallSettlementInfo.com.

[1] As used in this Notice, "lender-placed hazard insurance" excludes flood and stand-alone wind insurance policies.

## LPI POLICY NUMBERS / NÚMEROS DE PÓLIZA LPI

IF YOU ARE SUBMITTING CLAIMS WITH RESPECT TO MORE THAN ONE LPI POLICY, A SEPARATE CLAIM FORM MUST BE SUBMITTED FOR EACH LPI POLICY.

SI ENVÍA RECLAMACIONES PARA MÁS DE UNA PÓLIZA LPI, DEBE PRESENTAR UN FORMULARIO DE RECLAMACIÓN PARA CADA PÓLIZA LPI POR SEPARADO.

| Policy # / Póliza # | Policy Issued Date / Fecha de Implementada de Póliza |
|---|---|
| 6075530 | 01/22/2008 |

## LPI POLICY NUMBERS / NÚMEROS DE PÓLIZA LPI

IF YOU ARE SUBMITTING CLAIMS WITH RESPECT TO MORE THAN ONE LPI POLICY, A SEPARATE CLAIM FORM MUST BE SUBMITTED FOR EACH LPI POLICY.

SI ENVÍA RECLAMACIONES PARA MÁS DE UNA PÓLIZA LPI, DEBE PRESENTAR UN FORMULARIO DE RECLAMACIÓN PARA CADA PÓLIZA LPI POR SEPARADO.

| Policy # / Póliza # | Policy Issued Date / Fecha de Implementada de Póliza |
|---|---|
| 6075530 | 01/22/2008 |

M4092 v.10 07.17.2014

*January 19, 2012*                                                                    8

*Property at 300 Trinity Three Road*

*Irmo, SC 29063*

*The total or balance I was $2450.00. Now I am assessed $1430.00 more for what? Please explain how your company came up with this additional similar mortgage monthly amount?*

*I had ask for information pertaining to my TARP payment October 2008? I had asked for My November payment 2008? And why was it recorded as being received? I had asked where my Check is No #1248 which was held for 24 days until I canceled the payment. I had asked for the name of the individual(s) who sold my personal information to a third party? I had ask you to confirm all of my payments sent to Wilmington, Delaware from the October1, 2010-1 November 2011? In which reflects my payments covering my owed alleged debt of $6054.00. I say alleged because I was assigned the escrow account regardless of my agreement with your TARP department. I agreed to repay the debt assessed not only based on the better optional choice I was given, but it was my response to the assigned debt.*

*Thus, with your research of my questions would eliminate my debt substantially. However, I agree to paying the assigned debt to clear my name from all of the negative reports and harm your company has caused me. I am not admitting I have this debt because of negligence as a debtor but as inaccurate reporting and recording of my financial transaction.*

*Finally, I was told I was never accepted in the program initially back in October 2010 during a telephone call in August 2011. I was told by one of your employees and your telephone records can identify this person. And it was reported that I did not get my initial payment to the right office in time so your company returned the difference. I did not receive any written information pertaining to this until I complained of how your company falsifying my name on one of the inadvertently two prearranged electronic checks and how it was confirmed on April 11, and 29*

*January 19, 2012*                                                                                                      7

*Property at 300 Trinity Three Road*

*Irmo, SC 29063*

*matter I was assigned the escrow account in August 21, 2008 and with a written correspondence stating what my new monthly payments were going by September 2008. I never received that however, I did received a letter in September 9, 2008 of a breach of my personal rights by one of your former employers and what I should do to monitor my credit. By October 2008 I paid my debt accessed, but six months latter your company stated I was never with in the program, so my normal monthly payments was either placed in miscellaneous account or placed toward late fees and or saved until a monthly payment amount with the assigned escrow account was reached. Your company never disclosed to me that I failed to meet the first optional choice of three repayment options.*

*Once again it was easier to say I did not comply with when the funds arrived to your billing department and reported to your TARP department. We both know and have shared experience on how long one office sends written and communicates between offices and of posting paid payments.  Thus leaving me with a since of mistrust and skepticism that has followed me from 2005-2006 when I received seven telephone calls a day seven days a week for almost that full year. I spoke with a fellow company representative and he explained the computer automatic makes the telephone call, but I noted a live agent speaks once I answer and the telephone call. I had requested to the last agent that it was okay to make telephone calls, but not the harassment calls. For example 9:00 am and 11:00 am and 2:00 pm and 4:00 pm and 6:00 pm and 8:00 pm and  because my situation did not change because the computer was rebooting. with your telephone answers because  they have always changed as with the responses I get from office to office and from correspondence from state to state, and the reason I have this financial debt as it is!*

*January 19, 2012*                                                                                              6

*Property at 300 Trinity Three Road*

*Irmo, SC 29063*

*The inaccuracy was reported that your company did not receive my payment of $864.29 because a difference of $669.82 was short of $864.29 so the refund was for the difference but this total was from $1315.00. Then two months later the second refund check came in for $450.71 from $1315.00 which was $451.70 which left a balance of $864.29 my normal monthly payment that was reported as not receiving the full amount saying than $440.42 was not in the full amount of $864.29 so the refund was returned to me. But in actuality your office received from me a cashiers check of $1315.00. Which this payment adjustment should have reflected toward my normal monthly payment of $864.29 and the $450.71 refund checks should have been mentioned it was from the repayment department stating the reason for return.*

*Your company said I was never in the program I was told and it was reported that I did not get my payment to the right office in time so your company returned the difference from $1315.00 which was 451.70 which left a balance of 864.29 my normal monthly payment that was reported as not receiving the full amount. Which amount $1315.00 or 864.29 because regardless of being not accepted in the program as stated and being in the program your company had enough funds from the window of October 2010 through November 2011. However, as your company did before with my TARP debt in 2008, it was easier to say I did not comply with your arrangements and say that it was my error than to admit your company blunders in reporting, receiving, and recording the accuracy of my testimony.*

*This is the third question that has never been answered pertaining to the date of receipt of payment by your TARP department. I was assigned the escrow account allegedly in August 2008 but promised the opportunity to repay the debt that was paid by your office. But the truth of the*

*January 19, 2012*                                                                              5

*Property at 300 Trinity Three Road*

*Irmo, SC 29063*

*Your company reason of why I received the refunds after the decision was made under several alleged reasons out of several offices that provided inaccurate information concerning the accuracy of your reason for my noncompliance.*

*Keep in my why I called your company because the correspondence read nonpayment in April 2011 But I had asked in June 2011, about the $3456.00 payment within six days. It was ignored! Your company's first explanation why I received the refund payments was explained to me during a telephone conversation I had in June 2011. Your company fellow employer stated it was due to me the consumer not complying with the repayment plan agreement back in October 2010. She stated I did not get my initial payment into the office by the predetermined date of October 15, 2010. Thus was the reason for the returned payments. Secondly, I received correspondence stating your company did not receive the April payment. I receive this correspondence in June 2011. In July I receive the first refund check stating that I did not make my full payment of 864.29 in April 2011. Thirdly, the responses came as mention two months increments stating your company did not receive the payment and two months later a refund check followed stating I did not send my payment in full.*

*However, the correspondence read as follows in my April nonpayment notice arrived in June, and May in July, and June in August, and July in September, and August in October.*

*But this information was prematurely determined in June 2011 that I was not accepted in the repayment plan as agreed upon back in October 2010.  Your company admitted the refund checks were for insufficient funds which were in accurately reported.*

*January 19, 2012*                                                                                     4

*Property at 300 Trinity Three Road*

*Irmo, SC 29063*

*plan. I wished he would have corrected myself but I know your company is a debt collector so he collected a debt. This was the primary reason for my call to your company office. This was before your company changed my questions and claims for reimbursement into charges of non-compliance with the repayment department plan. I said maybe I should have suffer the financial lost and kept quiet, but your company sent correspondence in June 2011 stating you did not receive Aprils payment in June. Thus brings us to your company addressing my questions of not receiving Aprils payment verses addressing repayment plan or the $906.00 claim reimbursement or the not processing the payment properly under a fictitious name. Or declaring I missed Aprils payment in June, then sending a refund in July.  It was easier for your company to shift my focal thought to being canceled out of the program back in October 2010 versus explaining my questions.*

*Your company provided several reasons or explanations regarding why the refunds were returned to me all during a window of fifteen days before the repayment program was about to end. I did not receive or assigned a representative until late November 2011, just before my final payment was made! I received the first originated explanation that change from your fellow employee initial telephone conversation through correspondence from several different office with different messages up to your final research of information that was added in a summary packet of your instituting information in a chronological packet that was never disclosed to me the consumer as reported.*

*January 19, 2012*                                                                                          3

*Property at 300 Trinity Three Road*

*Irmo, SC 29063*

*out on the 29th of April 2011 but the both payments were processed on separate dates and that*

*alarmed myself do to the former mistrust I have with your company legacy employees experience*

*with handling my personal information with a former employee. Whose name has still has not*

*been disclosed to me requested. I presumed that my identity was breached again so I complained*

*to your fraud department that Mr. Monte Lyons processed an extra payment without my consent.*

*Because I made the telephone electronic payment on the 29th of April with Mr. Lyons and he took*

*my account information and gave me a 20.00 waiver and processed my payment and gave me my*

*confirmation number.*

*However, when checking my banking account had noticed two electronic payments totaling*

*2650.00 and overdrawn fees accessed to my account. Both electronic checks had my same*

*account information but the second check had a different date and most importantly, my name*

*was wrong and my sir name was incorrect. And lastly, the check was held for seven days from*

*the date of my payment. Thus leaving my reason of expected fraud was how I believed I was*

*charged twice instead of once by Mr. Lyons. But it was determined after I had a negative*

*balance of $906.00 and after $2650.00 mortgage payments later that your fraud department*

*explained that I had made a payment arrangement earlier for the month of April 2011 to be*

*withdrawn on the exact same date April 29th 2011. The first prearranged payment was with Ms.*

*Carla on the eleventh of April. And the Second was a payment on the 29th of April. It was during*

*this payment when Mr. Lyons has said he will waive the $20.00 processing fee, I said thank you!*

*During my telephone conversation it was never disclosed of his prearrangement and my*

*second payment, but it was determined and noted within your system that I was in a repayment*

*January 19, 2012*                                                                                 2

*Property at 300 Trinity Three Road*

*Irmo, SC 29063*

*450.71, 451.70 each time this total was subtracted from the amount of 864.29 and it was reported to me that I did not send 864.29. And this was the primary reason for the refund checks.*

*Please note, that your company did not provide an accurate total for the five refund checks. I paid in cashier's check 1315.00. I subtracted from __my payments__ verses your __refund payments__ was for incomplete payments of 864.29 and finally the __minus difference reported__ as follows: 1. __My payments__ with a difference of 1088.29, 864.29, 863.39, 864.29, 863.39 that was not disclosed to me nor were the funds were posted but my payment was reported as not being in full. Secondly, your company sent __refund payments__ to me and your company said that my payments did not add up to 864.29 so refund difference are as follows: 637.68, 413.58, 412.59, 413.58, 412.59 Theses totals does not include the additional insufficient check fee of 30.00 dollars.*

*And finally, __minus the difference reported__ was that the alleged refund checks were because I did not send in 864.29 and I had a difference missing each time for those five payments is why it was refunded but your company reported I missed five months of nonpayment. This information was not disclosed to me until your company conducted a research and added the total returned checks which ironically equivalent to five months at 864.29 plus late fees and processing fees. . the I have made all of my monthly payments to include the accessed late fees under the repayment plan. As mention a forehand, the amount returned to myself, should have been noted as a refund not as missed payments.*

*I called to address my primary concerned of having a checked cashed under a fictitious name but account information was disclosed. However, I gave two prearranged payments to be taken*

*January 19, 2012* <sup>1</sup>

*Property at 300 Trinity Three Road*

*Irmo, SC 29063*

*Good Day Ma'am,*

*I have not heard a response from you but I have heard from two of your company offices one in Dallas, TX and the other office out of Simi Valley California regarding possible foreclosure if the $3888.55 is not paid by June 2012. Ma'am, I thought you (Mrs. Stephanie Young) were researching some information for me? Secondly, I was told (again) I am four payments behind. The last time I was told this was in 2010 it was seven months of reported missed payments. As it was it in the 2010 covering a period of 2008-2010 it is reported to the C. B. as 120 days of non payments now here in 2011 a period from April 2011-January 2012 it is still be reported as 120 days. Thirdly, Your Company returned to me refunds checks not missed monthly payments.*

*Those five refund checks was predetermined by your company as missed monthly payments each time you sent me the refunds. But I sent in cashier's checks of 1315.00! Now the refund payments were subtracted from 864.29 not from 1315.00 because your company would have disclosed that verses reporting I did not send in my payment in full. Or your company should have stated the reason for returning the funds is based on repayment agreement annulment back in October 2010. But your company did not provide this information in writing until I accused your company of falsifying a prearranged electronic check payment.*

*However, I received five refund checks for five months in two months increments roughly sixty two days later from the due date of monthly mortgage payment each time I could only respond as quickly as you were communicating with me. The amounts are as follows 226.71, 450.71, 451.70,*

Mr. Nathaniel M. & Mrs. LeJeanne R. Adderley Sr.

300 Trinity Three Road

Irmo, SC 29063

May 6, 2011

Bank of America Home Loans Serv. (Countrywide Legacy Employers)

ATTN: BAC

P.O. Box 5170

Simi Valley Ca.

93062-5170

Certified Mail #: NA

REF: Alleged Account #065527223

Dear Madam or Sir:

I am writing to you concerning the multiple correspondences letters I receive from your company

Multiple departments.

To date, the documents and information I have, that you have sent, and the conversations with your service representatives, have been somewhat unproductive and have not answering many of my detrimental questions.

Other than the opportunity repay a debt that should not have never occurred, however to prevent your organization from putting my household and myself out of our dwelling. I had no other choice but to comply with the demands that were inappropriately delivered to me.

In lieu of this, I will still inquire concerning my legal rights and maintain my commitment to you until I have all my unresolved complaints, disputes, and misfortunes corrected and overall my debt to you paid in full.

WHAT IS THE GOAL OF THE QUALIFIED WRITTEN REQUEST:

To have my funds reinstated was my first request that I sent to the customer service office. This letter is to not try to correct the negative balance that has been created by me during the month April but it is to inform you that I will make payment arrangements to keep your company from squeezing my household out of our dwelling. What I mean is that I want to better our relationship. I know your company has debt collectors, but at what cost and whose expense?

Qualified Written Request

Mr. M. Lyons only took my payment that I made over the phone. This entire problem would have been prevented had I remembered that I had made the prior arrangements on the 11th of April with a Charmaine or Cindy. I certain that the system reflected my prior arrangements I made for the April 15th payment to be withdrawn on the 30th. However when I called on the 30th and only on the 30th, it should have been disclosed to me that there is a payment schedule for the 30th, but it was not. Now what your company decided to due was to hold off on processing the payment until the first of the May.

Which no doubt legal however, the because I am under the Forbearance Schedule repayment plan a red flag should have gone up alerting your representative you have scheduled $2620.00 to be withdrawn on the 30th of April. Once again he should have noted that I already have an April 30th payment scheduled to be processed on the 30th. He should have processed the payment as he confirmed his authorization to do so and when he provided me with the Confirmation No# 1220156, Check #12 was given the permission on that day. Instead, he was knowledgeable of what he could and could not do when he received my payment. Especially, since the system reflected two payments to be processed on the same date, April 30th 2011.

That were pre-arranged by myself and then arranged to be automatically withdrawn on the same day. In lieu of this your representative knew there was an error with this transaction from me and from him. However, he probably was guided on how to fix this problem. It would have saved me $900.00 dollars that I earned from being overdrawn in my checking account and gave me a reason to value my relationship with your company, even if he would have called me back and said before Mr. Adderley I cannot process this payment on the 30th of April because you already have one scheduled to be taken out his day. I would have said thank you, But what was done in the best interest of your company. It was better to process my payment on the May 2, 2011, with a electronic check with under a misspelled name, and sir name without the proper heading

on my check. Please note the first check and payment had my information down correctly, but the second check was not matching your quality of service.

Since you already had my permission prearranged on two separate occasions to be processed on the same date you process two payments anyway. Where are the standards of legal obligation to the customer? My bank is not in the clear as of yet, because all of the information on the second check was wrong except my routing number and checking account, but I have told them I am a victim of identity theft from my former Mortgage company. Therefore, the payment that was processed was actually with my approval but handled inappropriately.

The good news is that my May 15th payment was paid, however my self esteem was altered. I have to add why I state this because you I received a letter stating that my payment that I made on the 30th of April which was processed on the 2nd of May was not in the full amount of $864.69 dollars, thus I received an refund check in the amount of $227.72. But what about the remaining balance of $636.57 that was reported to me and possibly to the credit bureau as not being received, yet alone the actual $1087.28 that the financial tracking record should reflect but has no record of being recorded? The defamation of my name and credit has been going on too long. But I will address this issue later!

Overall, If I have not have complained long enough until hearing of your fraud department then speaking with The Fraud department who in turned corrected me on this issues. I never would have known the error was partially with me. I thought there was an unauthorized payment in which I inadvertently scheduled two payments. I realize that your company has departments that specializes I collecting debts. However, when I saw the check how it was electronically form mispelling and how and when it was processed I thought customer service department would have made this issue known to me verses accepting the second call from myself and not processing my payment on a later date to reflect and accurate withdrawal.

My real problem is why aren't the home retention/ collection department enforcing the repayment plan that I am own, Also being reflected in the system for all parties to view. So all department heads that calls or sends out electronic or written correspondence to me your client, has to be and should be screened. Especially before any payments are accepted! To prevent any further hardship to the client and foremost keeping the best interest of our company priority. All transaction should be approved by the collections department.

My complaints and concerns are in the following order with a few corrections from my previous letter to Customer Service in which the level of attention is beyond the entry level of Customer Service.

1. My payment that I gave Mr. Lyons to withdraw $1315.00 on the April 29th. He had asked me "what check number I wanted to use and I said check number #12.

Qualified Written Request

2. Mr. Lyons said that this is a $20.00 charge for this transaction and I said okay. He had asked me again "what check number I wanted to use" and I said check number #1.

3. Mr. Lyons gave me my confirmation number #1220156 and we concluded the telephone call. He also mentioned that he was going to wave the second $20.00 check fee. He did not clarify for what reason he waved the fee. If he knew that there should have been a fee for the original arrangements or not he did not make this known to me. However, he did receive the approval to process my payment and provided me with a confirmation number.

4. However, the error without the additional charge with no confirmation number nor did I give you the authorization to make this withdrawal any days after the 30th of April was illegal. If this were correct I would have given you the permission to take the payment charge over the telephone as on the 30th. As mentioned above I had made prior arrangements on the 11th of April.

5. The Payment that was taken on or after the 30th of April up to the May, 1or 2, 2011 was not authorized. I believe as a courtesy to me as the customer, Especially since I am under the forbearance program assigned to me by the Home Retention Collections Department. However, you are a debt collector, which to me is a dual edge sword statement. I should have been notified that I had made arrangements on two different days for a payment for the exact amount on the same date at different times. I will admit my error, but who is primarily the professional here?

You nor I have any record of making this telephone call. Thus you did not have the permission to charge me twice in the amount of $2650.00. However, I did make the arrangement on the April 11th, 2011 to have the April 15th payment of $1315.00 to be with automatic withdrawn on the 30th of April.

6. However when I called on the 30th of April to make the April 15th payment to be withdrawn it should have been noted and stated to me that I already have a payment scheduled in the amount of $1315.00 for April 30th. And it should not have been delayed as a payment in the system to being processed on May 1-2, 2011 as a May 2011 payment. That was not my scheduled arrangement.

Qualified Written Request

7. Finally, the additional check has my information wrong. The checks listed me as Nathaniel Adderly Jr. it di not include my wifes name all of our checks are as such. It was done inaccurately. MY ORIGINAL CONVERSATION HAS THE ACCURATE INFORMATION ON CHECK

NO.#12 . Thus, verifying the wrongful act conducted by someone or additional parties.

8. I have been charged twice this month in the amount of $2630 and leaving myself with a negative balance of $900.00 and unpaid expenses for this pay period. I still have to get to work. When will you return send me my funds in the amount of $900.00? Originally stated that this would have affected my May 15, 2011 in which it should have been accredited to me, however the correspondence I have been receiving does not reflect my payments.

9. I enclosed the actual bank transaction to reflect what transpired.

| 04/29/2011 | Check | 2 | CHECK #2 View | $20.00 | | $426.68 |
|---|---|---|---|---|---|---|
| 04/29/2011 | POS | | EXXONMOBIL POS 04-28-11 COLUMBIA SC 4692 BB&T CHECK CARD PURCHASE- | | | |
| PIN | $43.00 | | | | | |
| 04/29/2011 | Check | | TELLER CASHED CHECK View | | $760.00 | |
| 04/29/2011 | Check | 1 | CHECK #1 View | $1,315.00 | | |
| 05/04/2011 | Check | 12 | CHECK #12 View | $1,315.00 | | $35.00 |
| 05/04/2011 | | | | | | |

Total Item Amount : TOTAL RETURNED ITEM FEE ($35/ITEM): $1,315.00

| Fee | IMAGE EXCHAN12 | $1,315.00 |
|---|---|---|

Checking 4247 (Checking...94247)

Check Card (..4692)

| Available Balance | -$800.00 |
|---|---|
| Posted Balance | -$785.19 |
| Interest Paid (YTD) | N/A |
| Interest Rate | N/A |

Add Overdraft Protection

Qualified Written Request

   What I need from your company to provide me from which ever office that is capable of resolving this issue, to conduct a complete exam of my May 1-2, 2011 payment. It was in the amount of $1315.00 your (Customer Service Department) letter state that you did receive my payment for May 2011 in the amount of $864.69, so you sent to me a refund in the amount of $227.83 because $636.46 in or about as much was not received. This is so inaccurate, your authorized debit from my account does not reflect any lesser than you are reporting to me and perhaps the credit bureaus.   When will the defamation of character end?

*Denied loans, government stimulus packet, opportunity to better my financial status based on the history or my mortgage loan reports.*

   Please note your financial tracking record reflects two May 2, 2011 MISC. Posting -641.41 and a $227.83. However, it also reflects the two May 2, 2011 regular payment twice. Is this why I received the refund?

   (The refund check is from your BAC  NC4-105-01-20 P. O. Box 21848 Greensboro, NC branch 27420-1848) letterhead on the check.

*Qualified Written Request*

   To All departments please converse with each other, in order to correct any confusion between your

department correspondences addressed to the property 300 trinity three road, Irmo, SC 29063.

I make this statement because I would receive a letter from the following office letterheads.

(I received a correspondence from)



1. Customer Service CA6-919-01-41

P.O. Box 5170

Simi Valley Ca.

93062-5170

2. BAC Home loans Servicing LP

Attn: remittance Processing

P. O. Box 650070

Dallas, TX 75265-0070

*MY Payments are sent to this office Directed by the Home Retention Department*

BAC Home loans Servicing LP

Attn: remittance Processing

P. O. Box 15222

Wilmington, DE 19886-5222

3. Bank of America Home Loans

Mail Stop CA6-919-01-15

450 American Street

Simi Valley Ca.

93065

*(no primary department to speak with)  just this telephone number to call for any of my Q/C's)*

1-888-872-6514)

4. Bank of America Home Loans

Customer Service CA6-919-01-41

P.O. Box 5170

Simi Valley Ca.

93062-5170

Qualified Written Request

5. (I received some form of response to all of my correspondence, however the extremely important matters that CS is not aware of gets delayed because my verification that accompanies my request is not forwarded. See my May 9th correspondence and the CS May 24th, response correspondence to me and you will determine my plight. Home Retention/collections department should have sent to me the correspondence response letter with a courtesy letter to the CS department).

Bank of America Home Loans Servicing, LP

P.O. Box 10221

Van Nuys, CA 91410-0221

1-877-744-7691 extension 7729

Payment Plan Schedule (Mail payments to)

P. O. Box 15222

Wilmington, DE

19886-5222

6. *(I received a correspondence dated Aug. 24, 2010 from your company pertaining to a reinstatement calculation)*

Bank of America Home Loans

7105 Corporate Drive MSN: PTX-C-35

Plano TX 75024

Van Nuys, CA 91410-0221

7. *(I received a correspondence dated July 30, 2010 Foreclosure Review Committee for review)*

Bank of America Home Loans Servicing, LP

P.O. Box 8239

Van Nuys, CA 91409-8239

1-877-744-7691 extension 7729

Qualified Written Request


8. *(I received a correspondence dated July 1, 2009 Trisha J. Batuo in response to my correspondence dated February 24, 2009 BD of CA)*

Bank of America Home Loans

Customer Relationship Advocacy CA6-919-02-39

450 American Street

Simi Valley Ca.

93065

9. *(I received a correspondence dated March 17, 2009 loan history)*

*Countrywide Home Loans*

 Customer Service SV-B314

P.O. Box 5170

Simi Valley Ca.

93062-5170

10. *(I received a correspondence dated October 22, 2008 in response to my correspondence dated September 23, 2008)*

 Countrywide Home Loans

P. O. Box 940910

Mt McCoy Station Post Office

Simi Valley Ca.

93065

Countrywide's Special Services Hotline 1-866-451-5895

11. *(I received a correspondence dated September 6, 2008 from Sheila Zuckerman, Countrywide Office of the President purpose to inform me of possible selling of Identity disclosed to third party). I believe this was going on for more than just one month. And it has affected me to this very day I have been denied credit every since this.*

Countrywide      Reference No.# 08-67161208-01

Qualified Written Request

12. *(I received a correspondence dated August 25, 2008 with a suspense date October1, 2008)*

Countrywide Home Loans

Mail Stop, SV-TARP

450 American Street

Simi Valley CA. 93065

TARP Department 1-800-669-6608

*Please note that I had responded according to your request but my compliance was not honored thus creating the falsely recorded payments in your system.*

13. *(I received a correspondence dated August 21, 2008 assigned an escrow account)*

Countrywide Tax Service Corporation

P. O. Box 10211 Mail Stop, SV3-24

Van Nuys, CA. 91410-0211

1-800-669-6607

Qualified Written Request

Please note, I was assigned the escrow account irregardless of the latter option offered to me listed in the August 25, 2008 correspondence that your company sent to me giving me the option to correct this issue. I thought it was strange that all of this was in the middle of CW selling it proprieties and fraudulent acts and misleading information from your CWL employees. What I mean is that when I addressed my issue with the customer service or collections or TARP or Billing Department someone would ask a rhetorical question pertaining to my account knowing that the issue is with the home retention or collections department or whomever other than there department verses connect me through the right office. Although, the individual would listen try to change the subject from my correct plight but not readdressing my concerns nor accurately forward to the next department of interest. Especially when it involved CWLE who may have been knowledgeable of the criminal act that was reported how it pertains to me. I did not know if I was getting a true answer or not.

*For example* it has been reported to the credit bureaus that I did not make the November 2008 monthly payment. In fact I made a payment for $1000.00 the correspondence I had received reflected as such stating how the funds were distributed as it was necessary i.e.... late fees, miscellaneous account, to complete a payment etc...and *most disturbing is* when I was speaking a caller he stated he sees the $1000.00 on his screen that is, and then he said no I do not see the $1000.00. I said to him sir you just lied to me before you could take a second breathe needless to say I was furious with the quality of service provide. It was not recorded on the financial report as being received but it was reported to the credit bureaus as a late non-payment since 2008 November to this very date.

*Please note* that the customer service response to me dated for May 9-28, 2011, so I am attaching some information which may not reflect all of the correspondence and letters from all parties including myself, that is or maybe in question.

Also, it is very strange but accurate when I was provided free credit score monitoring for two years from your CW , However, as soon as the services is over my payment was returned and I was placed on a foreclosure notice. I know I was wrongfully assigned the escrow account the payment was made on time, however your company processed, deposited the payment at a later date and said it was my fault thus was the reason the CW had to assigned me the escrow account. I was told my payment did not arrive on the October the 1st, 2008. However, the August 21, 2008 correspondence letter and email stated differently.

In the middle of this I was informed of a fraudulent act committed by a former employee who sold unauthorized personal information about me to a third party. THE INFORMATION INCLUDED MY NAME, ADDRESS, Social Security number, mortgage loan number, and various other loan application information. And this has affected me to this very day I have been denied credit every since this. "Treated like a terrorist so to speak!"

*Denied loans, government stimulus packet, home improvements for energy efficient loans, and the opportunity to better my financial status based on the history or my mortgage loan reports. My very own bank refuses to give me a VA Loan based on the information reported to the CB concerning me.*

Qualified Written Request

Lastly, your company has declared what I have not done and what has not been paid or approved. I state this based on the last letter that I had received stating I did not make my May 1st, 2011 payment how ridiculous. I overpaid your company and suffered a tremendous financial burden, however after finding out that I frantically had made prior arrangements for the April 15th payment on April 11th to be withdrawn on the 30th of April I called on the 30th to make the 15th payment. Although, my original loan state my payment to be posted within your office by the first of every month until the account is paid in full, I have been assigned from your Home Retention Collections Department a Forbearance Repayment option to clear up the negative debt.

I had explained to your company my reasons for all of my payments dating back when I retire from the U.S. Army October 1, 2004 I had a tremendous pay cut. (1st 30days Late) Then I was not aware of the my payments not being accredited to my account accurately until February 2009. By this time every payment I had sent to the former CW/ BAC was recorded as non full payment. By this time I was told I have a bill of $3015,89 roughly from missed payments. I was told that the last payment was received at that time was for the month of August and September then December 2008. In fact my banking records and your financial record should and does not reflect as such.

I must mention the date and reason for the mistaken payment records.  By August 18th 2010 It was reported that I am *six month* behind on my monthly payments to me and the credit bureaus' in fact this was not the correct report.

Qualified Written Request

Now my records reflect the history of my account.

*Payment Number One*

1.   On *October 1, 2004 payment was made on October 30, 2004* I just retired from the Army and suffered a tremendous pay cut and I had sent out correspondence reflecting this information and I spoke with the office personnel.

*Payment Number two*

2.   I sent my payment in the form of a check February 2009 Check No# 1274 or 1284. The check was held for 21 days, and later reported as never been received. So I canceled that payment March 18, 2009. Remember the various departments I was working with were briefed on the nature of my calls, I would speak to two- three callers per call and in up with the same disappointing results.

*Payment number three*

3.   Since August 1, 2008 My mailed or telephone in payments in the amount of $864.29. On August 21, 2008 my property tax was paid by CW and I was assigned the escrow account. On August 25, 2008, I was given the option to pay the amount full by October 1, 2008. I sent in my September 2008 payment. I made the Deadline payment by October 1, 2008 in the form of a check. Although, my financial bank statement shows when the payment was actually processed and the amount of time your company takes to process an payment in the form of a check; does not constitute the payment not being received on the first to your office. However, I was already assigned the escrow account on August 21, 2008. But CW did not require a payment until October the first on the thirty-first it was not disclosed. I did send my answer to TARP office and I called the Office disclosing with option I chose. However it was not accepted nor was I given a start date of the assigned escrow. But by Quite naturally since I had to make the payment on October 1, 2008 my normal October payment was received on October 31st, 2008 which is probably considered to be *Payment number three but it should be payment number two as possibly a late payment not missed payment. The frightening issue is that my bank accountant went through somewhat of the exact same ordeal with her mortgage company concerning the property tax issue, wow!!!*

Thus, since my endeavors were seemingly ignored. I believed in order to remove the weight off of the former CW shoulders the weight was placed on me consumer who has had a history of financial ups and down.

I believed it was done to cover up to several bad decisions not due to my fault but perhaps to change the direction of focus from the real of issue identity theft which have possibly could have been going on for over a long period of time especially since there was an investigation conducted internally and by the F.B.I. which was validated for the accuracy stated in Ms. S. Zuckerman letter to myself.  Or Maybe someone suggested let's see how the issue could reflect as the person (s) who has a possible financial problem who would probably look like and will eventually become a 'bad credible financial risk based on their financial status.   Who overtime is expected to become a self fulfilling prophecy?

Accountants and Lawyers are paid to aid their clients in whatever way save the company money and loss. I just know that in light of all of the historical illegal findings with some of the  now former mortgage companies and some of the their former employees if not friends or acquaintances who may have gone down with the ship or may have grabbed on to a drifting floating rubble or even possibly carried over as a legacy. It is certain that I am still being victimized over something which could have been resolved years ago. I am not saying that your attorney(s) or lawyer(s) has done or was involved with the former CW theft I just know he or she or they had to have had some help. From my OM studies I do know a little banking and legal terms. I am just tired of the harassment and being told no based of my history delinquent accounts and payment history that is reported on my credit report to the credit bureaus yet alone keeping a good name.

*Payment number four-five*

4.   Since it was reported that I did not make the full payment amount with the escrow account

My payments were distributed accordingly to your record of my debt. I was not informed that my payment were not being accredited toward my loan. However, it was being reported to the credit bureau as a late payment. The fourth reported missed or late payment has to be for November 2008. Were I was told that the payment never made it to your company. However your correspondence to me says differently concerning receiving a payment. It says your company did in fact receive my payment.

*Lastly, Payment number six*

5.  I sent out my August 1, 2010 for the amount of $864.69, the payment was returned to me on August 24, 2010, roughly one year and 365 days before this all began. So I used the funds to hire an attorney.

*Payment balance*

Over all the report shows six to seven months of non-payments in fact I have made all of my payments, they are reported differently.

6.  Thus, I have paid an additional $441.00 with my original monthly payments as authorized by the Home Loans Servicing, LP under the Repayment Plan Schedule for the last eight months which is a total of $3528.00 which should reflect payments in which my initial payment history of falling behind October 2004 and the two months of returned payments August 2008, August 2010 would be consider accurate not the missed payment under an alleged escrow account. I still believe it should have never happened.

Qualified Written Request

    Although, I had and have spoken with pretty much every department concerning this before the defamation and credit score had plummeted, during the timeframe (2008-Present)for someone to review my plight, and lastly here today after several attempts to resolve this matter I find myself defending my accurate inferiority response and transaction concerning weither or not your company will resolve this matter or continue to send out correspondence letters and telephones calls concerning what I am not doing. The hardest thing for me to figure out I am I speaking to an legitimate representative BAC Advocacy Customer Service, TARP, Home Retention/Collection Department, Billing or am I speaking to a ring of individuals of C.W.L.E. who still has access to my account personal information and intercepts my questions and concerns and answers in the best interest of the former theft who sold my personal information or not?

    Although this information is briefly stated, my troubles are deeply imbedded. I certain I will get an answer weither it is from the right BAC Home Loan office or the alleged individuals involved in my history of defamation of character etc... There are too many parties involved for me to consider or accept any accuracy.

Qualified Written Request

    Once again, Please refrain from reporting any negative credit information [if any] to the credit reporting agency until you respond to each of the requests. Speaking with several department heads pertaining to this account when I have been given permission to correct something I believe was based on a fraudulent act is frustrating in many ways.

Sincerely,

Mr. Nathaniel M. & Mrs. LeJeanne R. Adderley  Sr.

065522723

# Qualified Written Request

Mr. Nathaniel M. or Mrs. LeJeanne R. Adderley

300 Trinity Three Road

Irmo, SC 29063

May 6, 2011

Bank of America Home Loans Serv. (Countrywide Legacy Employers)

ATTN: BAC

P.O. Box 5170

Simi Valley Ca.

93062-5170

Certified Mail #: NA

REF: Alleged Account #065527223

Dear Madam or Sir:

I am writing to you concerning the multiple correspondences I receive from your company

Departments.

To date, the documents and information I have, that you have sent, and the conversations with your service representatives, have been unproductive and have not answering many of my detrimental questions.

Other than the opportunity repay a debt that should not have never occurred, however to prevent your organization from putting my household and myself out of our dwelling. I had no other choice but to comply with the demands that were inappropriately delivered to me.

In lieu of this, I will still inquire concerning my legal rights and maintain my commitment to you until I have all my unresolved complaints, disputes, and misfortunes corrected and debt paid in full.

## WHAT IS THE GOAL OF THE QUALIFIED WRITTEN REQUEST:

To have my funds reinstated was my first request that I sent to the customer service office. This

letter is to not try an correct the negative balance that has been created from the error of myself,

# Qualified Written Request

Mr. M. Lyons only took my payment that I made over the phone. This entire problem would have been prevented had I remembered that I had made the prior arrangements on the 11th of April with a Charmaine or Cindy I certain that the system reflected that information for the April 15th payment to be withdrawn on the 30th.  However when I called on the 30th and only on the 30th instead of processing the payment on the first of the May by your billing department he should have noted that I already have an April 30th payment scheduled to be processed on the 30th. He should have processed the payment as he confirmed his authorization to do so and when he provided me with the Confirmation No# 1220156, Check #12 was given the permission on that day. However, there would have been to many transactions that were processed. I complained long enough until The Fraud department corrected me on this issues. I thought customer service department would have made this issue known to me verses accepting the second call from myself and not processing my payment on a later date to reflect and accurate withdrawal.

My real problem is why isn't the home retention/ collection department enforcing the repayment plan that I am own, being reflected on the system for all parties to view. So all department heads that calls or sends out electronic correspondence to this client, has to be and should be screened. Especially before any payments are accepted! To prevent any further hardship to the client and foremost keeping the best interest of our company priority. All transaction should be approved by the collections department.

1.  My payment that I gave Mr. Lyons to withdraw $1315.00 on the April 29th.  He had asked me "what check number I wanted to use and I said check number #12.

# Qualified Written Request

2. Mr. Lyons said that this is a $20.00 charge for this transaction and I said okay. He had asked me again "what check number I wanted to use" and I said check number #1.

3. Mr. Lyons gave me my confirmation number #1220156 and we concluded the telephone call.

4. However, the error without the additional charge with no confirmation number nor did I give you the authorization to make this withdrawal any days after the 29th of April was illegal. If this were correct I would have given you the permission to take the payment charge over the telephone as on the 29th. As mentioned above I had made prior arrangements on the 11th of April.

5. The Payment that was taken on or after the 30th of April up to the May, 1or 2, 2011 was not authorized. I believe as a courtesy to me as the customer, Especially since I am under the forebearence program assigned to me by the Home retention Collections Department. However, you are a debt collector, which to me is a dual edge sword statement. I should have been notified that I had made arrangements on two different days for a payment for the exact amount on the same date at different times. I will admit my error, but who is primarily the professional here?

   You nor I have no record of making this telephone call. Thus you did not have the permission to charge me twice in the amount of $2650.00. However, I did make the arrangement on the April 11th, 2011 to have the April 15th payment of $1315.00 to be with automatic withdrawn on the 30th of April.

6. However when I called on the 30th of April to make the April 15th payment to be withdrawn it should have been noted and stated to me that I already have an April 30th

# Qualified Written Request

post-dated payment in the system, versus it being processed on May 1-2, 2011 as that payment.

7. Finally, the additional check has my information wrong. The checks listed me as Nathaniel Adderly Jr.. MY ORIGINAL CONVERSATION HAS THE ACCURATE INFORMATION ON CHECK NO.#12 . Thus, verifying the wrongful act conducted by someone or additional parties.

8. I have been charged twice this month in the amount of $2630 and leaving myself with a negative balance of $800.00 and unpaid expenses for this pay period. I still have to get to work. When will you return send me my funds in the amount of $2150.00? This will affect my May 15, 2011 payment due to the error from your customer service representative.

| Date | | Type | | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 04/29/2011 | | Check | 2 | CHECK #2  View | $20.00 | $426.68 |
| 04/29/2011 | | POS | | EXXONMOBIL POS 04-28-11 COLUMBIA SC 4692 BB&T CHECK CARD PURCHASE-PIN | $43.00 | |
| 04/29/2011 | | Check | | TELLER CASHED CHECK  View | $760.00 | |
| 04/29/2011 | | Check | 1 | CHECK #1  View | $1,315.00 | |
| 05/04/2011 | | Check | 12 | CHECK #12  View | $1,315.00 | $35.00 |
| 05/04/2011 | | | | IMAGE EXCHAN12 | $1,315.00 | |
| **Total Item Amount : TOTAL RETURNED ITEM FEE ($35/ITEM): $1,315.00** | | Fee | | | | |

## Checking 4247 (Checking...94247)
### Check Card (...4692)

| | |
|---|---|
| **Available Balance** ❓ | -$800.00 |
| Posted Balance ❓ | -$785.19 |
| Interest Paid (YTD) | N/A |
| Interest Rate | N/A |
| Add Overdraft Protection | |

# Qualified Written Request

I need which ever office is capable of resolving this issue, to conduct a complete exam of my May 1-2, 2011 payment.  It was in the amount of $1315. 00 your (Customer Service Department) letter state that you did receive my payment for May 2011 in the amount of $864.69, so you sent me a refund in the amount of $227.83 because $636.46 in or about as much was not received. This is so inaccurate, your authorized debit from my account does not reflect any lesser than you are reporting to me and perhaps the credit bureaus.

Please note your financial tracking record reflects two May 2, 2011 MISC. Posting - 641.41and a $227.83. However, it also reflects the two May 2, 2011 regular payment twice. Is this why I received the refund?

(The refund check is from your BAC  NC4-105-01-20 P. O. Box 21848 Greensboro, NC branch 27420-1848) letterhead on the check.

To All departments please converse with each other, in order to correct any confusion between your department correspondences address to the property 300 trinity three road, Irmo, Sc 29063.

I make this statement because I would receive a letter from the following office letterheads.

1.  (I received a correspondence from)

Customer Service CA6-919-01-41

P.O. Box 5170

Simi Valley Ca.

# Qualified Written Request

93062-5170

2.   BAC Home loans Servicing LP

Attn: remittance Processing

P. O. Box 650070

Dallas, TX 75265-0070

MY Payments are sent to this office Directed by the Home Retention Department

BAC Home loans Servicing LP

Attn: remittance Processing

P. O. Box 15222

Wilmington, DE 19886-5222

**3.   (I received a correspondence from)**

**Bank of America Home Loans**

**Mail Stop CA6-919-01-15**

**450 American Street**

Simi Valley Ca.

93065

(no primary department to speak with) just this telephone number to call for any Q/C`s

1-888-872-6514)

**4.   (I received a correspondence from)**

**Bank of America Home Loans**

**Customer Service CA6-919-01-41**

P.O. Box 5170

Simi Valley Ca.

93062-5170

# Qualified Written Request

5. (I receive all of my correspondence, however the extremely important matters that CS is not aware of gets delayed because my verification that accompanies my request is not forwarded. See my May 9th correspondence and the CS May 24th, response correspondence. Home Retention/collections department should have sent to me the correspondence with a courtesy letter to the CS department).

**Bank of America Home Loans Servicing, LP**

P.O. Box 10221

Van Nuys, CA 91410-0221

1-877-744-7691 extension 7729

Payment Plan Schedule (Mail payments to)

**P. O. Box 15222**

**Wilimington, DE**

**19886-5222**

6. (I received a correspondence dated Aug. 24, 2010 from your company pertaining to a reinstatement calculation)

Bank of America Home Loans

7105 Corporate Drive MSN: PTX-C-35

Plano TX 75024

Van Nuys, CA 91410-0221

7. (I received a correspondence dated July 30, 2010 Foreclosure Review Committee for review)

Bank of America Home Loans Servicing, LP

P.O. Box 8239

Van Nuys, CA 91409-8239

1-877-744-7691        xtension 7729

# Qualified Written Request

8. **(I received a correspondence dated July 1, 2009 Trisha J. Batuo in response to my correspondence dated February 24, 2009 BD of CA)**

Bank of America Home Loans

**Customer Relationship Advocacy CA6-919-02-39**

**450 American Street**

Simi Valley Ca.

93065

9. **(I received a correspondence dated March 17, 2009 loan history)**

<u>Countrywide</u> Home Loans

**Customer Service SV-B314**

P.O. Box 5170

Simi Valley Ca.

93062-5170

10. **(I received a correspondence dated October 22, 2008 in response to my correspondence dated September 23, 2008)**

<u>Countrywide</u> Home Loans

P. O. Box 940910

Mt McCoy Station Post Office

Simi Valley Ca.

93065

Countrywide's Special Services Hotline 1-866-451-5895

11. **(I received a correspondence dated September 6, 2008 from Sheila Zuckerman, Countrywide Office of the President purpose to inform me of possible selling of Identity disclosed to third party)**

<u>Countrywide</u>    Reference No.# 08-67161208-01

# Qualified Written Request

P. O. Box 940910

Mt McCoy Station Post Office

Simi Valley Ca. 93065

Special Services Hotline 1-866-451-5895

**Simi Valley California, declaring what I have not done and what has not been approved by one Upon receipt of this letter, please refrain from reporting any negative credit information [if any] to any credit reporting agency until you respond to each of the requests.**

Sincerely,

Mr. Nathaniel M. & Mrs. LeJeanne R. Adderley

065522723

BAC Home loans Servicing LP

Attn: remittance Processing

# Qualified Written Request

P. O. Box 650070

Dallas, TX 75265-0070

MY Payments are sent to this office Directed by the Home Retention Department

BAC Home loans Servicing LP

Attn: remittance Processing

P. O. Box 15222

Wilmington, DE 19886-5222

1. Federal Trade Commission

600 Pennsylvania Avenue NW,

Washington, DC. 20580

[ C L I C K  **H E R E**  A N D  T Y P E  C O M P A N Y  N A M E ]

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:<br>Countrywide | FROM:<br>Mr. Nathaniel & Mrs. Lejeanne Adderley |
| COMPANY:<br>[Click here and type company name] | DATE:<br>8/6/2014 |
| FAX NUMBER:<br>1.800.293.8158 | TOTAL NO. OF PAGES INCLUDING COVER:<br>2 |
| PHONE NUMBER:<br>803-318-2087 | SENDER'S REFERENCE NUMBER:<br>65527223 |
| RE: | YOUR REFERENCE NUMBER:<br>[Click here and type reference number] |

☑ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:

I have forwarded to your office regarding my efforts to secure home owners insurance. Please note that I am able to obtain this coverage only at a higher rate than what your company, my mortgage company can provide. So far I have been offered numerous offers from your company to perhaps assist me with my situation. Although promising, all of your attempts has ended with no in so many words. Please if you want to assist me then allow me to have my home owners insurance as an Esgrow account through your company. I just wanted you to take note of my efforts to maintain my property with the help of my mortgage company under Gods' permission.

Sincerely,

Mr. Nathaniel M. Adderley Sr.

*Mr. Nathaniel M. Adderley Sr., BS*
*300 Trinity Three Road*
*Irmo, SC*
*29063*
*803-749-9558(h)*

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Countrywide Home Loans | **Fax:** | 8055205019 |
| | Escrow Department | | |

| | | | |
|---|---|---|---|
| **From:** | Nathaniel | **Date:** | 8/6/2014 |
| **Re:** | 2007-2008 Property tax Receipt | **Pages:** | 5 |
| **CC:** | Carol/ or a Responsible Representative | | |

☑ Urgent    ☑ For Review    ☐ Please Comment    ☑ Please Reply    ☐ Please Recycle

**Note: _TARP/ESCROW_**

I spoke with a Ms. Carol two days ago and she stated if I were to complete certain transactions; she could submit the requests for approval to make the addressed corrections. Please see attached correspondence!

Sincerely,

Mr. Nathaniel M. Adderley Sr., BS
300 Trinity Three Road
Irmo, SC
29063
803-749-9558(h)

# IMPROVING THE WAY MY LENDERS, DO BUSINESS WITH ME!

Your credit score is 540 (Scores may range from a low of 250 to a high of 900; certain exclusion scores may exist)

Your credit score was obtained on 05/21/2014

The key factors that adversely affected your credit score were:

SERIOUS DELINQUENCY AND PUBLIC RECORD OR COLLECTION FILED

TOO FEW ACCOUNTS CURRENTLY PAID AS AGREED

NO RECENT NON-MORTGAGE BALANCE INFORMATION

LACK OF RECENT REVOLVING ACCOUNT INFORMATION

If you have any questions regarding this decision, please contact us at PO Box 3437, Omaha, NE 68103 or by phone at 800/444-6220 or by fax at 402/602-6294.

Sincerely,

Cardmember Services

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW.,Washington DC 20006.

( 1-800-226-5328 )          703-246-7909   Anything
                                           come up
                            Officer AGGOUR  Called

SUNOCO 0632160801 02-03 MC LEAN VA 8366 BB&T CHECK CARD
PURCHASE

                  McClean va   22101 zip code
                                Fin. crime
Google      1413          703-246-7800
          ( Change Bridge Rd.)   8:00 a.m to 5:00 p.m
            703-893-2905
                          ( 1350 - Change Bridge Rd.)
934 West Broad Street          703-827-5765
Falls Church   703-241-9620
                          ( 123 change Bridge )
                            703-893-6777

5501 Lee Highway          Anderson Sunoco Station
   Arlington   703-532-0773


7233 Arlington          Loehmanns Plaza Sunoco
Boulevard
Falls church   703-573-5774


Zendough / call back 1 to 2 hours
1-866-344-9062      Made Report 2/14/210 12 2:21 p.m control number
                                                           4931
Fairfax County          GOV / Police / Financal Crime
Report a crime                      703-691-2131
  Report a crime paid          CRS fittle a finca
                                          crime,

**WESTON ADAMS LAW FIRM**
1501 RICHLAND STREET 29201
POST OFFICE BOX 291
COLUMBIA, SOUTH CAROLINA 29202

TELEPHONE NUMBER
803-254-1675
FACSIMILE NUMBER
803-799-3141

DATE:     October 9, 2012
TO:       Nathaniel Adderley
          300 Trinity Three Road
          Irmo, SC 29063

### *PLEASE BE SURE TO READ & FOLLOW ALL OF THE INSTRUCTIONS AT THE BOTTOM OF THIS FACSIMILE.*

REGARDING CASE:     Nathaniel Adderley
LOAN NO.:           065527223

Per your request we are providing you with the
(    )      PAYOFF
( XXX )    REINSTATEMENT
amount on the above referenced loan

# THE AMOUNT IS $10,277.36 TO BE PAID ON OR BEFORE BUT NO LATER THAN 10/17/12

******Payoff Figure is subject to verification by this office upon receipt of funds.********
If verification shows a change in the figure, you may have to pay an additional amount of money.
*****WE MUST HAVE THESE FUNDS IN OUR OFFICE NO LATER THAN THE DATE ABOVE. CHECK MUST BE MADE PAYABLE TO <u>WESTON ADAMS LAW FIRM</u> IN THE FORM OF A <u>BANK CASHIERS CHECK ONLY.</u> SHOULD OUR OFFICE RECEIVE FUNDS NOT MADE PAYABLE TO THIS OFFICE OR NOT IN THE FORM OF A BANK CASHIERS CHECK, WE WILL RETURN THE FUNDS TO YOU.<u>TRUST ACCOUNT, CREDIT UNION CHECKS; OR ESCROW ACCOUNT CHECKS WILL NOT BE ACCEPTED EITHER.</u> CHECKS WHICH ARE NOT IN THE CORRECT FORM OR AMOUNT WILL <u>NOT</u> BE ACCEPTED EVEN IF RECEIVED SHORTLY BEFORE A FORECLOSURE SALE. IT WILL BE THE RESPONSIBILITY OF THE SENDER TO KNOW WHEN WE ARE HOLDING A FORECLOSURE SALE. IF ANY ATTEMPTED PAYMENT IS REFUSED OR DENIED IT IS ALSO THE RESPONSIBILITY OF THE SENDER.

*Any further questions. Please contact Jennifer Peters at 803-254-1675 or jennifer@westonadams.com*
*This facsimile is intended for the above listed recipient only. All other use is prohibited.*
*If you receive this fax in error, please contact the number listed above.*

***Pursuant to the Fair Debt Collection Practices Act, this is an attempt to collect a debt and any or all information obtained may be used for that purpose.

# NOTICE OF CASE SCHEDULING

**STATE OF**
**SOUTH CAROLINA**

May 28, 2013



Case  2012CP3203744 -   Wells Fargo Bank National Association  VS
Nathaniel M Adderley Sr has been added to the following Court Roster:

**Roster ID: 136 - Non Jury Trial Roster for week of June 17, 2013**

This case has been assigned as priority 105 of 105 cases scheduled for the court period of
6/17/2013 through 6/21/2013

Roster for Non-Jury Trials for the week of June 10, 2013 before the  Honorable Lee S. Alford
has been published to the website. Please check the website (www.lex-co.sc.gov) for your case
as soon as possible.

**********Roster Meeting will be held on Monday, June 17, 2013 at 9:00 a.m.**********

| Mail Notice To: | Court Info: |
|---|---|
| Nathaniel M Adderley<br>300 Trinity Three Rd<br><br>Irmo, SC 29063 | Common Pleas<br>Lexington County Judicial Center<br>205 East Main Street<br>Lexington, SC 29072-9072 |

**If you have any questions regarding the scheduling of this case, please contact the courts at:**

**(803)785-8212**

Respectfully,

Beth A. Carrigg
Clerk of Court

STATE OF SOUTH CAROLINA          )
                                 )      IN THE COURT OF COMMON PLEAS
COUNTY OF ~~RICHLAND~~/LEXINGTON )      DOCKET NO. 2012-CP-32-374~~4~~
2012-CP-32-3744                  )
                                 )
Wells Fargo Bank, National Association, as )
Trustee for the Holders of First Franklin   )
Mortgage Loan Trust 2004-FF6, Mortgage )
Pass-Through Certificates, Series       )
2004-FF6,                               )
                                 )
                  Plaintiff,     )
                                 )
        vs.                      )      **ORDER REMOVING CASE**
                                 )      **FROM ACTIVE DOCKET**
Nathaniel M. Adderley, Sr., Lejeanne   )
Adderley, AllSouth Federal Credit Union )
f/k/a Fort Jackson Federal Credit Union, )
UniFund CCR Partners, Nationstar       )
Mortgage LLC, Deborah J. Smith,        )
                                 )
                  Defendant(s).  )
                                 )

        Because the defendant, Nathaniel Adderley has filed bankruptcy, thus staying the pending

foreclosure action until such time as the Bankruptcy Court may issue its Order lifting the bankruptcy

stay from the subject property,

        IT IS ORDERED THAT the above case be struck from the active docket, with leave to

restore to the active docket under the same case number.


                                  _____
                                  PRESIDING JUDGE
                                  THOMAS A. RUSSO

Lexington, South Carolina
_____6/17_____, 2013

WE SO MOVE:

_____
Weston Adams
Leigh B. Brown
William P. Stork
Attorneys for Plaintiff
Post Office Box 291
Columbia, South Carolina  29202
Phone: (803) 254-1675

*MY DISPUTE*

*29 November 2013*

*Good morning,*

*I wanted to respond as quickly as possible to you because the longer I have to wait the more I suffer lost financially, emotionally, physically, and mentally from this whole ordeal.*

*Although you have asked me to gather my credit report and to show you where I think it is negatively reported so to speak.*

*It ends with me being forced into bankruptcy to prevent the following from happening be forced out of my residence by Richland County Sherriff Department if I did not make my payment by the 17th of October 2012.*

*Secondly, I was told several things by my mortgage company. I was told by Ms Sheila Zuckerman that my identity was sold by a former CW employee. The individual has been fired and the FBI was following the reports, however, I certain that this individual had to have some possible constituents and did not act alone Especially when the BAC took over CW proprieties and hired the CW employees and hired them as BAC CW Legacy Employees.*

*Thirdly, I was placed on three repayment plans in five years. Each time I was told after making either six to eight months payments or communicating back and forth with them with no response from them concerning these repayment plan or payments nor was I assigned a representative until there was a dispute concerning their Reporting, Filing, Posting of my payments. My Mortgage company told me I was never accepted within the repayment plan nor did they receive my payment on time.*

*Fourthly, I have my bank statements of negative balance for overdrawn pay periods to this day. When I made arrangements for payments and reported as fraudulent acts my payments were returned sixty-six days later as insufficient funds. The payment was in the amount of 1315.00 but the return check was for 450.71 stating I did not send in the full amount of $864.74 the insufficient amount of not payment was returned to me. My repayment plan payment of 1314.85 was reported as 450.71 insufficient payments of 864.74. The difference was not recorded nor reported as never been received for six months and it is on my Credit report as Nov 2012 was the last time they received a payment from me.*

*Fifth, I have paid over $19194 dollars during this third repayment plan, lost several important accounts, been dropped because of shareholders interest, denied credit because of the reports*

## MY DISPUTE

*made to the credit bureaus and the view by companies I have requested credit. My yearend tax statement does not reflect the payments made to my mortgage company.*

*Lastly, I had disputed all of the payments that were not actually received or should have read as non payments There records should have read: I retired October 1, 20010 my pay decreased so the 10-1-04 payment was paid on the 30th of October 2004. The second was in 2009 when my payment was not reported in November 2009. The third is when the lost my check NO# 1184, it was not found nor cashed for 21 days so I cancelled the check. The following are in-between repayment plans. August 24, 20010 when My Mortgage Company sent back my payment because they said I was never received my payment TARP payment back in 2008 and I owe six months of non payments in August 2010. I was given the option to repay this debt and I did dispute this during this time however this second repayment plan was reported that I was not accepted in this repayment plan because of nonpayment in October 2010. I was assigned someone to handle this matter in October 26, 2011 roughly 15 days before the repayment plan was going to end. During this entire time it was reported as nonpayment for six months and no mentioning of my payments in the amount of 1315.00 but 450.71 was returned six time plus 39.99 dollars and the amount of 864.74 was reported as insufficient of 450.71. I was told that I was still three months behind after paying $19194.00 and loosing roughly 11,000 in overdrawn negative balance since April 2011.*

*I received two payment over the years from the FTC v. CW H L, Inc settlement fund Secondly, Independent Foreclosure review Payment QSF loan Servicer: BANK of America, (Realty Consulting Agency) for the illegal reporting and unfair practices. And yet I still have to prove my reason for filing a criminal and possible a civil mortgage lender suit.*

*I received a letter on 9 October 2012 from Weston Adams Law Firm stating I have to pay a debt of 10,277.32 by the 17 October 2012. I called the following day to address this issue and I was asked do I plan to fight this information regarding my case or pay the fine? I was told I was in foreclosure in July -October 2011 and I have the option to repay this debt but the telephone call said wait for the repayment plan call but I received the letter from Weston Adams Law Firm stating differently. So and I filed for bankruptcy to prevent from being forced out of my home. My initial chapter 13 court appearance took place in March 2012 my mortgage company reported that I was officially in foreclosure in April-May 2012 and reported since August 2012 was my last payment that I have not made a payment sense then and it is on my credit report that I have*

## MY DISPUTE

an amount PAST DUE of 6,914.00, but no reflection of what was paid to them toward that balance. This is my dispute for inaccuracy of reporting, wrongful infringements of my rights, violation of my constitutional rights as an American citizen, damage of my creditability and financial worth and lost wages and damages, with life threatening medical conditions.

V/R

Mr. Adderley

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:                                    )        CASE NO: 12-07701-dd
                                          )        CHAPTER: 13
Nathaniel Michael Adderley, Sr.           )
                                          )        CERTIFICATE OF SERVICE
                    Debtor(s)             )
                                          )
_____)

I, Kim Morrow, Paralegal to Weston Adams, attorney for Movant, do hereby certify that I have served

the following with the foregoing Notice of Mortgage Payment Change in the above-referenced case by

either electronic mail in accordance with U.S. Bankruptcy Court, District of South Carolina, Operating

Order 04-11or depositing a copy of same in the United States Mail, postage prepaid, addressed as

follows, whichever means is appropriate:

Nathaniel Michael Adderley, Sr.
300 Trinity Three Road
Irmo, SC 29063

Eric S. Reed
220 Stoneridge Dr., Suite 301
Columbia, SC 29210


                                   /s/ Kim Morrow
                                   Kim Morrow


Columbia, South Carolina
April 17, 2014

Dear [ ] /s/ Kim Morrow

I my original loan does not include an Escrow I have taken care of my Property tax and I will continue to pay my property tax. I have address this issue with S.P.S. that I do not agree with the change But will resume my loan origination rights. I will Not address any B.A.C. issues as per correspondence But I have enclosed my Property tax information reflecting my ownership.

NATHANIEL M ADDERLEY SR
300 TRINITY THREE RD
IRMO SC 29063

Previously Enrolled in
Credit Monitoring

<u>LEGAL NOTICE</u>

# If you provided personal information or made mortgage payments to Countrywide before July 1, 2008, you could get benefits from a data theft settlement.

*Para una notificación en Español, llamar o visitar nuestro website.*

A settlement has been reached with Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB Full Spectrum Lending Division, and Bank of America Corporation (together called "Countrywide") about the theft of personal and financial information from their customer databases. Benefits include credit monitoring, identity theft insurance and cash reimbursement for identity theft and out-of-pocket expenses to eligible people whose personal and financial information was stolen.

The United States District Court for the Western District of Kentucky will hold a hearing to decide whether to give final approval to the settlement so that the benefits can be issued. Those included have legal rights and options, such as submitting a claim for benefits or excluding themselves from or objecting to the settlement. More information is in the detailed notice, which is available at www.CWdataclaims.com.

## WHAT IS THIS ABOUT?

Around August 2008, it was learned that a senior financial advisor formerly employed by Countrywide stole confidential information of millions of consumers from Countrywide's records and sold it to a third party for marketing purposes. The stolen records included names, Social Security numbers, home and office addresses, telephone numbers, credit and bank account information, employment history and information, and other information people provided on mortgage applications or other mortgage documents. The lawsuit alleges that Countrywide did not adequately protect confidential personal and financial information. Countrywide denies all of the claims and says that it did nothing wrong.

## WHO IS INCLUDED?

You received this notice in the mail because you have been identified as a Class Member. The Class includes everyone in the United States who: (1) received a letter from Countrywide anytime from August 2, 2008 to and including November 2, 2008, notifying them that their personal information was involved in an alleged theft committed by a Countrywide employee; or (2) who obtained a mortgage from Countrywide or whose mortgage was serviced by Countrywide prior to July 1, 2008. Countrywide, for this purpose, does not include Bank of America.

You should remain vigilant by reviewing account statements and monitoring free credit reports. If you notice any unauthorized activity, promptly contact your financial institution. You can receive a free credit report at www.annualcreditreport.com or, by calling 1-877-322-8228.

## WHAT DOES THE SETTLEMENT PROVIDE?

Countrywide's records show that you have already enrolled in Triple Advantage® Premium credit monitoring provided by Consumerinfo.com an Experian® Company. As part of the settlement you're now automatically receiving Experian's $1 million guarantee in addition to the $25,000 identity theft insurance coverage you have been receiving. In addition, you are eligible to receive reimbursement from Countrywide of up to $50,000 for each identity theft incident. Separately, you are eligible for reimbursement from Countrywide of certain out-of-pocket expenses such as check printing, credit monitoring, telephone calls and postage, among others. Countrywide will pay up to a total of $5 million to reimburse identity theft claims and up to a total of $1.5 million to reimburse out-of-pocket expenses. The Settlement Agreement, available at www.CWdataclaims.com, describes all of the details about the proposed settlement.

## HOW DO YOU ASK FOR BENEFITS?

To get reimbursements you must submit a claim form. Claim forms are available at the website or by calling 1-866-940-3612. Please note that there are different deadlines and claim forms for different reimbursements. The earliest deadline to claim either of these reimbursements is October 18, 2010.

## YOUR OTHER OPTIONS.

If you do not want to be legally bound by the settlement, you must exclude yourself from the Class by June 24, 2010, or you will not be able to sue, or continue to sue, Countrywide about the legal claims this settlement resolves, ever again. If you exclude yourself, you cannot get any benefits from the settlement. If you stay in the Class, you may object to it by June 24, 2010. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in the case, known as, *In Re: Countrywide Financial Corp. Customer Data Security Breach Litigation*, No 3:08-MD-01998-TBR, MDL 1998, on July 9, 2010, to consider whether to approve the settlement, and a request by Class Counsel for attorneys' fees, costs, and expenses of up to $3.625 million. Class Counsel will also request payment of incentive awards up to $500 for Representative Plaintiffs and of up to $250 for the Named Plaintiffs for their services on behalf of the whole Class. These payments will be paid separately by Countrywide and will not reduce the benefits available to Class Members. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to. For more information, call or go to the website shown below.

**www.CWdataclaims.com**          **1-866-940-3612**

ACM12

 **Countrywide**

PO Box # 940910
Mt McCoy Station Post Office
Simi Valley, CA 93065

September 6, 2008

Nathaniel M. Adderley Sr.                                    Ref. No.: 08-67161208-01
300 Trinity Three Rd
Irmo, SC  29063-2260

lllllllllllllllllllllllllllllllllllllllllllllll

Dear Nathaniel M. Adderley Sr.,

We are writing to inform you that we recently became aware that a Countrywide employee (now former) may have sold unauthorized personal information about you to a third party. Based on a joint investigation conducted by Countrywide and law enforcement authorities, it was determined that the customer information involved in this incident included your name, address, Social Security number, mortgage loan number, and various other loan and application information.

We deeply regret this incident and apologize for any inconvenience or concern it may cause you. We take our responsibility to safeguard your information very seriously and will not tolerate any actions that compromise the privacy or security of our customers' information. We have terminated the individual's access to customer information and he is no longer employed by Countrywide. Countrywide will continue to work with law enforcement authorities to pursue further actions as appropriate.

If you are a current Countrywide mortgage holder, we will take necessary precautions to monitor your mortgage account and will notify you if we detect any suspicious or unauthorized activity related to this incident. We will also work with you to resolve unauthorized transactions on your Countrywide mortgage account related to this incident if reported to us in a timely manner.

As an additional measure of protection, Countrywide has arranged for complimentary credit monitoring services provided by a Countrywide vendor at no cost to you over the next two years. We have engaged ConsumerInfo.com, Inc., an Experian® Company, to provide to you at your option, a two-year membership in Triple Advantage Credit Monitoring. You will not be billed for this service. Triple Advantage includes daily monitoring of your credit reports from the three national credit reporting companies (Experian, Equifax® and TransUnion®) and email monitoring alerts of key changes to your credit reports.

To learn more about and enroll in Triple Advantage, log on to www.consumerinfo.com/countrywide and complete the secure online form. You will need to enter the activation code provided below on page two of the online form to complete enrollment. If you do not have Internet access, please call the number below for assistance with enrollment. You will have 90 days from the date of this letter to use the code to activate the credit monitoring product.

Borrower Activation Code: CWHRS5XA5

In light of the sensitive nature of the information, we urge you to read the enclosed brochure outlining precautionary measures you may want to take. The brochure will guide you through steps to:

✓ Contact the major credit bureaus and place a fraud alert on your credit reports;
✓ Review your recent account activity for unauthorized charges or accounts;
✓ Be vigilant and carefully review your monthly credit card and other account statements over the next twelve to twenty-four months for any unauthorized charges; and
✓ Take action should any unauthorized activity appear on your credit report.

We apologize again that this incident has occurred and for any inconvenience or worry it may have caused. If you have questions, please call our special services hotline at 1-866-451-5895, and a specially trained representative will be ready to assist you.

Sincerely,

*Sheila Zuckerman*

Sheila Zuckerman
Countrywide Office of the President
Enclosure

FTC v. Countrywide Home Loans, Inc. Settlement Fund
c/o Gilardi & Co. LLC
P.O. Box 719088
San Diego, CA 92171-9088



CLAIM #: FTCCHL-2247770-5

NATHANIEL M ADDERLEY SR
300 TRINITY THREE RD
IRMO, SC  29063-2260

20893

1596192

FTC v. Countrywide Home Loans, Inc.
Claims Administration Center
P.O. Box 808054
Petaluma, CA 94975-8054
1-888-230-3196

### FTC v. Countrywide Home Loans, Inc.

Dear Consumer,

The Federal Trade Commission ("FTC"), the nation's consumer protection agency, reached an agreement with Countrywide to settle charges that the company engaged in unlawful practices in servicing consumers' home mortgage loans.

The FTC settlement includes a redress fund to compensate eligible consumers whose mortgage loans were serviced by Countrywide between January 2005 and June 2008.  Countrywide also agreed to stop the illegal servicing practices and make major changes to its practices.

You are receiving this check because Countrywide serviced your mortgage loan during the relevant time period and, according to the FTC, either the company charged you excessive fees, or you were in Chapter 13 bankruptcy and unlawful practices occurred in the servicing of your loan. The enclosed check is your share of the money the FTC was able to collect.

**Please cash the enclosed check no later than September 19, 2011.  After that, your check could bounce and you could be charged a bank fee.  Please note that the FTC never requires the payment of money up-front, or requests additional information, before consumers cash refund checks issued to them.**

Please call us toll-free at 1-888-230-3196 if you have any questions.

To learn more about this case, visit: http://www.ftc.gov/countrywide.

Sincerely,

Claims Administration Center

NOTE: SEE REVERSE FOR SECURITY FEATURES

Check No.
1095893

FTC v. Countrywide Home Loans, Inc. Settlement Fund
c/o Gilardi & Co. LLC
P.O. Box 719088
San Diego, CA 92171-9088

Bank of the West          90-78/1211

1596192

PAY      **********Thirty-one Dollars and 50/100**********                    Pay Amount: $31.50

TO THE
ORDER OF

Date: July 21, 2011

CLAIM #: FTCCHL-2247770-5

VOID AFTER September 19, 2011

NATHANIEL M ADDERLEY SR
300 TRINITY THREE RD
IRMO, SC  29063-2260

Paying Agent – Rust Consulting, Inc.
P.O. Box 8054
Faribault, MN 55021-9454



IMPORTANT PAYMENT AGREEMENT INFORMATION ENCLOSED

## Independent Foreclosure Review

June 28, 2013

**Your payment is enclosed.**



B

*\* 1 8 0 2 1 3 7 3 1 4 – 9 2 3 2 1 7 2 \**

Reference Number: 1802137314

Property Address:

300 TRINITY THREE R

IRMO SC 29063

*Si usted habla español, tenemos representantes que
pueden asistirle en su idioma.*

**SNGLP
NATHANIEL M ADDERLEY
300 TRINITY THREE RD
IRMO, SC 29063-2260



Dear Nathaniel M Adderley,

You were recently sent a notice that you are eligible to receive a payment as a result of an agreement between federal banking regulators and Bank of America in connection with an enforcement action related to deficient mortgage servicing and foreclosure processes.

**This letter includes your check.** It also explains the amount of the payment, why you are receiving a payment, how to cash the check, and other important information and disclosures.

**Your payment is: $500.00.**

## Why you are receiving a payment

Earlier this year, Bank of America entered into an agreement with federal banking regulators—the Office of Comptroller of the Currency and the Board of Governors of the Federal Reserve System. This agreement resolved the Independent Foreclosure Review required by the regulators. Additional information about this agreement can be found at www.occ.gov and www.federalreserve.gov.

Regulators determined your payment amount based on the stage of your foreclosure process and other considerations related to your foreclosure.

## How to cash the check

**You must cash or deposit the check within 90 days, or the check will be void.** All borrowers listed on the check must sign it to cash it.

> The payment amount is final.
> There is no process to appeal the payment.

*Continued on reverse side*



FTC v. Countrywide Home Loans, Inc. Settlement Fund
c/o Gilardi & Co. LLC
P.O. Box 8090
San Diego, CA 92171-9008

1-90-70/1211

Check No.
1095893

PAY
TO THE
ORDER OF

************Thirty-one Dollars and 50/100************

Bank of the West

NATHANIEL M ADDERLEY SR
300 TRINITY THREE RD
IRMO, SC  29063-2260

Date: July 21, 2011          Pay Amount: $31.50

CLAIM #: FTCCHL-2247770-5

VOID AFTER September 19, 2011

1596192

PREPARED TO PROVE

*Mr. French*
*February 17, 2011*

1. *Pay timeline with proof (BAC/Countrywide, BBT, USAA, State Farm, Richland County Treasurer Office)*
2. *Closing documents*
3. *List everyone I talked too.*
4. *QWR (Qualified Written Report)*
   a. *Filled out and in detail*
   b. *Payment history 2004-2011*
   c. *If ignored I have a claim*
5. *Breached contract*
6. *Sold personal information to an undisclosed parties*

   *South Carolina Laws*
   1. *Slander of Creditor*
   2. *Monetary Damages (attainable information) Credit denied!*
   3. *Attorney fees*



USMS INSPECTED

BY

Mr. N. M. Oakberley Jr.
300 Trinity Three Road
Juno, SC
29063

Clerk of the United States
District Court for the
Southern District of Florida
400 North Miami Ave
8th Floor
Miami, Florida
33128