Dick Mayo

P.O. Box 378

Erie, CO 80516-0378

303.828.2290

dmayo@rfmayo.com

9-24-14



| CLERK OF THE COURT | CLASS COUNSEL | COUNSEL FOR THE BANK OF AMERICA DEFENDANTS | COUNSEL FOR QBE DEFENDANTS |
|---|---|---|---|
| Clerk of the United States District Court for the Southern District of Florida 400 North Miami Ave. 8th Floor Miami, FL 33128 | Adam M. Moskowitz Kozyak, Tropin & Throckmorton, P.A. 2525 Ponce de Leon Blvd., 9th Floor Coral Gables, FL 33134 | David L. Permut Goodwin Procter, LLP 901 New York Ave. NW Washington, DC 20001 | Robyn C. Quattrone BuckleySandler LLP 1250 24th Street, NWSuite 700 Washington, DC 20037 |

Re: Objection to Proposed Settlement; Hall v. Bank of America Settlement, Case No.: 12-cv-22700-FAM

Dear Court and Counsel:

With respect to the above referenced case, I object to the proposed settlement as follows:

I received a notice in the mail stating I am a class member with policy #3519838 and policy issued on 01/22/2009.

Class counsel requests $16 million in fees; however, as of September 21, Class Counsel has not posted a fee motion on the Settlement Website for the Class to review. The fee motion provides critical information that the Class needs in order to evaluate Settlement fairness, reasonableness, and adequacy. The Class also needs the fee motion to evaluate the reasonableness of the fee

1

request. Even though the requested $16 million represents only 7% of the Settlement Fund, Class Counsel could still be receiving a windfall. The requested attorney fees should be tied to the actual value of the settlement relief, not the amount theoretically available to the Class. Even though Class Counsel's fees will not impact the settlement fund, the fee award should be reasonable and reflect the relief collected by the Class. Despite the clear sailing provision in the Settlement Agreement, the Court should review the value of the settlement relief and compare it to the actual claims submitted and paid.

How does the relief and recovery in this case compare to Farmer v. Bank of America, N.A. and BAC Home Loans Servicing, L.P., Civil No. 5:11-CV-00935-OLG (W.D. Tex.)? In that case, Class Members could receive up to a 100% refund of the premium charged. How many claims were made and paid in that case? The relief and recovery in that case should shed light on the reasonableness, fairness, and adequacy of the Settlement here.

The Prospective Relief in this case is inadequate. The Bank of America Defendants placed insurance in a manner such that they allegedly received an unauthorized benefit. Plaintiffs also alleged that the Bank of America Defendants received additional commissions from the QBE Defendants. Finally, Plaintiffs alleged that the way in which LPI Policies were obtained and placed caused the rates to be excessive. Class Members will waive these claims for the Class Period, but they and future BofA customers will be subject to same practices in 5 years.

In 5 years BofA Defendants can accept hazard LPI commissions to BofA-affiliated agents or brokers; enter into hazard LPI quit-share captive reinsurance arrangements on new or renewal hazard LPI Policies; place hazard LPI through an LPI insurer affiliated with Defendants; establish Hazard LPI coverage above the last known coverage amount, replacement cost value, or unpaid principal balance; and not credit borrowers' escrow accounts with any hazard LPI refund even if borrower provides evidence of insurance coverage. In 5 years QBE Defendants can provide to BofA Defendants and affiliates hazard LPI commissions and below-cost or free outsourced services services that include expenses for the QBE Defendants' own benefit. The Prospective Relief merely delays Defendants' harmful practices, it does nothing to address the underlying issues of the case.

The Full Release was not included in Notice or the Notice Packet. Class Members provide a release in exchange for settlement benefits. Because the Release is the basis of the Settlement, it should be provided to the Class. It is unfair and unreasonable to refer Class Members to the full Settlement Agreement because the purpose of the Notice is to provide Class Members with all necessary information to make an informed decision about submitting a claim, opting-out, or objecting.

The Release is overbroad. The Release includes family members other than co-borrowers. The Release also includes unnamed third-parties: any other insurance carriers or entities that issued or may have issued or tracked and/or monitored insurance coverage and LPI insuring real property

2

owned by Class Members and/or Defendants and affiliated companies. No additional relief has been provided to Class Members despite the expansive release.

There is a total of more than 12 million loans in Defendants' collective portfolios. Notice was provided by mail to Class Members for which BofA has a last known mailing address. Why wasn't notice provided by email as well? What percentage of Defendants' 12 million plus loans are Class Members? What percentage of Class Members did not receive mail notice (i.e. were returned undelivered or for which BofA did not have last known mailing address)? How publication notice tailored to reach the majority of Class Members that did not receive mailed notice? What percentage of the class was expected to be reached on the single publication date in USA Today?

Class Members should be permitted to request exclusion through the Settlement Website. The Claims Administrator has established an online claims process already. Class Members should be permitted to submit their Exclusion Requests online as well. By requiring class members to submit exclusion requests by mail, the Parties have placed an unnecessary financial burden on the Class because Class Members have to pay to opt-out, and the Class has to pay Administrator costs.

The Claim Form is designed to deter and discourage Class Members from submitting claims. The Claim Form unnecessarily requests information that already is in Defendants' possession. Defendants already know which borrowers were insured under an LPI Policy during the Class period and which borrowers were charged a Net Premium by Defendants for an LPI policy. As a result, the Claim Form questions do not help claim form administration or prevent fraud.

Class Members are forced to submit separate Claim Forms for each LPI Policy in order to receive settlement relief. How are Class Members supposed to know how many LPI Policies were forced-placed? Again, this is information in Defendants' possession and Class Members should not be required to provide the information or complete and submit more than one Claim Form. It's unnecessary and burdensome to require Claimants to identify each LPI Policy number and determine whether or not they still owe or fully paid for LPI coverage.

The Claim Form's Question 1 and Question 2 are confusing, unclear, and misleading as well. Question 1 asks, "Have you been charged by the Bank of America Defendants for, and still owe and have to paid, the premium on a lender-placed hazard insurance policy covering your residential property? If a Claimant has more than one policy, one may be paid while the other may have an outstanding balance. How will a Claimant know how to answer the question? Question 2 has the same problem, "Have you been charged by the Bank of America Defendants for and paid all or a portion of the premium on a lender-placed hazard insurance policy covering your residential property? If a Claimant has more than one policy, one policy may be fully paid but another may not be. Further, how does a Claimant know which policy constitutes "still owe" and which policy has been paid only "a portion" of? Considering the confusing nature of the Claim Form, the Claim Form should contain a phone number and/or email address for the

3

Settlement Administrator in the event a Class Member has a question. Also, given that Claimants must scour records to find LPI policy numbers, Defendants and the Administrator should have a process for assisting Claimants identify which policies have LPI numbers and which polices were either paid in full, have an outstanding balance, or were partially paid (and help Claimants understand the difference between the three). The Claim Form Instructions do not provide direction for any of the above issues.

In light of the Claim Form issues, the Parties and the Claims Administrator have unfairly taken a "strict" enforcement policy regarding claim form submissions. Under the Settlement Agreement, "Full compliance" is necessary for the submission of a valid Claim, and the absence of any of the requirements will invalidate the claim. The "strict" process is unfair and Class Counsel should have advocated for a process that notifies Class Members of any Claim Form deficiencies and provided a time period to correct such deficiencies.

Cancelled checks are refunded to Defendants after 90 days. Any unused settlement funds, whether from cancelled checks or otherwise, should be distributed to Class Members, pro rata. Defendants should not be permitted to reclaim any portion of the Settlement Fund; after all, it was created for the benefit of the Class.

I do not intend on attending the fairness hearing.

_____
Dick Mayo

PRIORITY MAIL ★ EXPRESS™

EST SERVICE IN THE U.S.

INTERNATIONALLY, MS DECLARATION AY BE REQUIRED.

2013 OD: 12.5 x 9.5

01000006

UNITED STATES POSTAL SERVICE

1007

PMID EVERGREEN.CO 80439 SEP 24, '14 AMOUNT

**$19.99**

00048589-04

EK391652206US

IATIONAL USE

UNITED STATES POSTAL SERVICE® | PRIORITY ★ MAIL ★ EXPRESS™

WRITE FIRMLY TO MAKE ALL COPIES LEGIBLE.

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT) PHONE ( 3033173040

D. Mayo
P.O. Box 378
Erie. CO 80511

PAYMENT BY ACCOUNT (if applicable)

DELIVERY OPTIONS (Customer Use Only)

☐ **SIGNATURE REQUIRED** *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**

☒ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT) PHONE ( )

Clerk of the United States
District Court for the Southern
District of Florida
400 North Miami Ave. 8th floor
Miami, Fl. 33128

ZIP + 4® (U.S. ADDRESSES ONLY) 33128

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
$100.00 Insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☒ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code: 80439 | Scheduled Delivery Date (MM/DD/YY): 9.25.14 | Postage: $ 19.99 | |
| Date Accepted (MM/DD/YY): 9.24.14 | Scheduled Delivery Time: ☐ 10:30 AM ☐ 3:00 PM ☒ 12 NOON | Insurance Fee: $ — | COD Fee: $ — |
| Time Accepted: 1258 ☐ AM ☒ PM | 10:30 AM Delivery Fee: $ — | Return Receipt Fee: $ — | Live Animal Transportation Fee: $ — |
| Weight: ☒ Flat Rate lbs. 3 ozs. | Sunday/Holiday Premium Fee: $ — | Total Postage & Fees: $ 19.99 | |
| | Acceptance Employee Initials: [illegible] | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| | ☐ AM ☐ PM | |

LABEL 11-B, JANUARY 2014 PSN 7690-02-000-9996 3-ADDRESSEE COPY

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES POSTAL SERVICE.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.