UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-cv-22700-FAM

CHERYL HALL, et al., on behalf of themselves
and all others similarly situated,

    Plaintiffs,

v.

BANK OF AMERICA, N.A., individually and as
successor by merger to BAC HOME LOANS
SERVICING, et al.,

    Defendants.

---

OBJECTION OF DANIEL HALL AND LANETTE HALL

---

## INTRODUCTION

Daniel Hall and Lanette Hall ("Objectors" or collectively "Hall") are class members who have standing to object to this proposed settlement. As shown on their attached claim forms, Daniel Hall and Lanette Hall are members of the proposed settlement class who have timely filed claims. See Exhibits A – C, which are incorporated herein by reference as though set forth in full. Objectors reserve the right to provide more evidence of their class member standing if necessary as providing such evidence is not required by the procedures or requirements to object. Objector Daniel Hall's current address is 1001 Harbor Lights Drive, Corpus Christi, Texas 78412 and his telephone number is (361) 510-4981. Objector Lanette Hall's current address is 1001 Harbor Lights Drive and her telephone number is (361) 510-7846. Objectors are represented by counsel whose contact information is below. Objection is made to any requirement to object that is not contained in the notice and/or that is not satisfied herein, including not limited to the requirement that the objection must be personally signed by an objector represented by counsel. In any event, objector's signatures appear on the attached exhibits, which are incorporated into this objection. Objectors do not intend on attending the fairness hearing in person or through counsel and object to the extent that requiring personal attendance at the fairness hearing would violate their due process rights and right to be heard on this objection. Objectors join the objections of any other objectors or *amici* to the extent those objections are not inconsistent with this one. Objection is made to any settlement provision that purports to limit the right of class members to object or appeal. Although Objectors do not believe it is necessary, they wish to advise that to the extent this objection is similar to others filed in similarly objectionable settlements, the attorneys responsible for those other objections have authorized the use of that work product for this objection.

1

A.      **Standards for settlement review.**

Settlement fairness does not just require that the size of the settlement be adequate, but also requires that the *allocation* of the settlement between what class counsel receives and what the class *actually* receives be fair. *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013) ("*Pampers*"); *Redman v. RadioShack Corp.*, -- F.3d --, 2014 U.S. App. LEXIS 18181 (7th Cir. Sep. 19, 2014); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014). This claims-made settlement fails the latter test, as it will likely pay class counsel more than the class.

Class counsel will protest that the settlement "makes available" $228 million in monetary relief. But the reality is that next to none of this money will actually be distributed. Class counsel's own motion states that it will take "four to five hours" each for highly-trained employees to determine whether class members are class members. Dkt. 403-3 at 14. How is a lay class member—most of whom have no idea what "force-placed insurance" is supposed to make a claim? Even if we assume a 7% claims rate—far greater than the sub-1% claims rate that is typical in claims-made settlements where consumers are unsure if they are entitled to make a claim—the attorneys will receive about half of the total settlement benefit; in all likelihood, they will receive the majority. Similarly, the injunctive relief is illusory: it will benefit people who aren't class members, rather than the class members who were supposedly victimized.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Pampers*, 724 F.3d at 715. In short, "[c]areful scrutiny by the court is 'necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members.'" *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quoting *U.S. v. City of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980), *modified on other grounds*,

2

664 F.2d 435 (5th Cir. 1981) (*en banc*)). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey,* 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006)).

The Court's oversight role does not end at making sure that the settling parties engaged in properly adversarial arm's length settlement negotiations. "In class-action settlements, the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members. For the economic reality [is] that a settling defendant is concerned only with its total liability, and thus a settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense.... And that means the courts must carefully scrutinize whether [class counsel's and the named representatives'] fiduciary obligations have been met." *Pampers*, 724 F.3d at 717-18 (internal quotations omitted).

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718 (compiling cases and authorities); *accord Holmes*, 706 F.2d at 1147. An actual showing is required, beyond a court's "complete confidence in the ability and integrity of counsel." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1315 (11th Cir. 2013).

Class counsel, by agreeing to a claims-made process that won't pay claims, "has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178, 179 (3d Cir. 2013) ("*Baby Products*"). Defendants and class counsel are entitled to agree to a settlement that limits BOA's overall

3

liability to a reasonable amount. But Rule 23(e) does not permit them to negotiate a settlement where class counsel gets the overwhelming lion's share of that amount.

The settling parties focus on the six factors for settlement fairness discussed in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). But like the multi-factor tests of other circuits, the *Bennett* six-factor test is not exhaustive. *Bennett*'s test simply does not provide an exclusive list of reasons to reject a settlement. *See Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530-31 (11th Cir. 1994) (concluding that the district court abused its discretion despite "thoroughly address[ing]" all six factors and concluding that each weighed in favor of approval). This Circuit has long commanded district courts to also "always consider the possibility that that an agreement reached by the class attorney is not in the best interest of the class," and beware of settlements which enrich class counsel to a greater degree than they do the absent class. *Pettway*, 576 F.2d at 1215-16; *Piambino II*, 757 F.2d at 1140 ("The district court should have rejected the settlement as unfair because it was accomplished at the expense of the minority members of the plaintiff-class, primarily to provide Lead Counsel an attorney's fee.").

Hall's objection is that the settlement is unfair because class counsel is appropriating an excessive amount of the settlement value for itself, and the settling parties seek to gain approval of that arrangement without even apprising the Court and class of the final allocation. As such, the inevitable discussion of *Bennett*'s factors in response to Hall's objection should be seen for what it is: a red herring.

      **B.**     **The injunction does not compensate class members for past injury; in the alternative, it demonstrates an intraclass conflict that precludes certification under Rule 23(a)(4).**

The reason why the prospective injunctive relief should not enter the calculus is because "[t]he fairness of the settlement must be evaluated primarily on how it *compensates class members*—not on whether it provides relief to other people, much less on whether interferes with defendant's marketing plans." *Pampers*, 724 F.3d at 720 (quoting *Synfuel Techs., Inc. v. DHL*

*Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) and adding emphasis). Even where "the *cy pres* fund and injunctive relief are substantial benefits secured under the settlement agreement, they benefit the public and future consumers of [the defendants' product]—not Class members for past injuries—and cannot be a key consideration in determining the fairness of the settlement." *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *15 (N.D. Ill. Jan. 3, 2014). Simply, "No changes to future [business practices] by [defendants] will benefit those who already were misled." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010) (advertising); *see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (injunctive agreement not to use the abusive debt collection letter that was at issue in the case was a "gain" of "nothing" for class members). Here, BOA is agreeing to pay tens of millions of dollars (mostly to attorneys) to resolve litigation over force-placed insurance. It clearly has no desire to defend these practices in court, and it is insanity to believe that BOA would engage in force-placed insurance practices in the absence of an injunction. The injunction adds nothing to the settlement benefit.

In other litigation, plaintiffs' counsel has argued that the injunction is valuable because it benefits that subset of class members who continue to do business with BOA against the risk of future force-placed insurance. But plaintiffs cannot have it both ways. If an uncertified subclass realizes class benefits from a settlement provision at cost to BOA, plaintiffs have created an intra-class conflict between class members who no longer do business with BOA and class members who still do business with BOA. The former would wish to maximize financial compensation with no injunction, while the latter would prefer the injunction. By adding an injunction to the settlement, class counsel has maximized the recovery of one uncertified subclass at the expense of the other uncertified subclass. This cannot be done without separate subclass certification and separate class representation. Rule 23(a)(4); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Dewey v. Volkswagen, AG*, 681 F.3d 170 (3d Cir. 2012); *In re Literary Works*, 654 F.3d 242 (2d Cir. 2011). Class counsel cannot have it both ways: either the

injunctive relief is meaningless, or they have created an intraclass conflict that precludes certification of a single settlement class.

### C. The settlement is unfair: the class is not the foremost beneficiary of the settlement

The three components of the settlement are a "claims-made" settlement that pays each claiming class member a check; "injunctive relief" that changes BOA's future business practices; and a separate $16 million cash fund for attorneys' fees that reverts to BOA if this court deems it excessive. The combination is designed to benefit the attorneys, but not the class, at minimum expense to BOA.

Unlike with an all-inclusive pure common fund, each of the benefits here is formally segregated and compartmentalized. This segregation forms what is known as a "constructive common fund." *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (evaluating a similar "constructive common fund" settlement); *In re GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995) ("*GM Trucks*") (A severable fee structure "is, for practical purposes, a constructive common fund."); *GM Trucks*, 55 F.3d at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal.").

A constructive common fund structure is an inferior settlement structure for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and or named representative payments. *See Bluetooth*, 654 F.3d at 949. Because "the adversarial process" between the settling parties cannot safeguard "the manner in which that [settlement] amount is *allocated* between the class representatives, class counsel, and unnamed class members," it is no surprise that the most common settlement defects are ones

of allocation. *Pampers*, 724 F.3d at 717 (emphasis in original); *see also Holmes*, 706 F.2d at 1147 (noting the importance of review of the fairness of allocation and not just the adequacy of settlement sum). Thus, a constructive common fund structure prevents the Court from exercising its discretion, in furtherance of its fiduciary duty, to cure the most endemic settlement ailment.

It is commonplace for objectors to complain that a settlement is insufficiently large in the aggregate. But the focus of Halls' objection is quite different. His concern is that the settling parties have designed the settlement to benefit class counsel, the named representative, future customers of BOA, and the defendants, all at the expense of benefitting the class. It is this very concern that animated the Third Circuit to vacate the settlement in *Baby Products*, the Sixth Circuit to vacate the settlement in *Pampers*, the Seventh Circuit to vacate the settlement in *Redman* and *Eubank*, and the Ninth Circuit to vacate the settlement in *Bluetooth*. In any class action settlement, it's a foundational principle that class members should be "the foremost beneficiaries" of the accord. *Baby Prods.*, 708 F.3d at 179.

*Bluetooth* identified three warning signs of a settlement that is inequitable between class counsel and the class: **(1)** A disproportionate distribution of fees to counsel; **(2)** A clear sailing agreement; and **(3)** A "kicker" (*i.e.* a reversion of excess fees to the defendant). *Bluetooth*, 654 F.3d at 947-49; *accord Redman* (criticizing all three aspects).

### 1. A recipe for disproportionate fees

The first signal is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.*; *see also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05, *comment b* at 208 (2010) ("*ALI Principles*") ("a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns"). Here, the class will only recover a minimal amount from the enfeebled claims process, while the settlement permits class counsel to seek, unopposed, an award of fees and costs of $16 million.

The amount the class actually receives under the settlement is the critical baseline in performing the *Bluetooth* disproportionality analysis. For example, in *Eubank*, 753 F.3d 718, the parties argued—and presented expert evidence—that it would be possible for class members to make $90 million in claims. The district court approved the settlement without looking at the number of claims granted. On appeal, the Seventh Circuit reversed on "multiple grounds." One was that the *Eubank* attorneys would receive $11 million, but the claims process was so convoluted that the class would receive at most $8.5 million. Similarly, in *Pampers*, class counsel argued that the settlement permitted every class member to ask for a refund—but because the refund process required parents to retain years-old diaper boxes' UPC codes and receipts, the Sixth Circuit recognized that the settlement did not provide any actual recovery to the class, while paying the attorneys millions. And in *Redman*, the Seventh Circuit held it error to consider 83,000 settlement vouchers to be worth face value when many would go unused or would not be used for their full face value. *See also Bluetooth*, 654 F.3d at 943 (reversing and remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *Baby Prods.*, 708 F.3d at 174 (reversing where district court failed to "withhold final approval until the actual distribution of funds [could] be estimated with reasonable accuracy"); *GM Trucks*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees."); *DeLeon v. Bank of Am.*, No. 6:09-cv-1251, 2012 WL 2568142, 2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20, 2012) (finding that a low-value claims-made settlement would "surely result in a low claims rate" and recommending that the settlement be rejected for failing the fairness inquiry), adopted in full *De* 2012 U.S. Dist. LEXIS 91126 (M.D. Fla. July 2, 2012). Any defense of this settlement's claims-made procedure relies on district-court cases that fail to acknowledge what recent appeals courts actually do when faced with settlements like this.

To the extent that the Court wants to predict what the actual recovery will be, even under extremely generous suppositions, that benefit will not exceed the proposed attorneys' fees of $16

million. Hall confidently asserts this because empirical data is clear—even in consumer settlements with the most efficacious claims mechanisms, claims rates are extremely low. *E.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns."); Daniel Fisher, *Odds Of A Payoff In Consumer Class Action? Less Than A Straight Flush*, Forbes.com (May 8, 2014).

In this case, where it would take "four to five hours" for a highly-trained and experienced BOA employee to review mortgage records to determine whether a class member was able to make a claim, lay class members who have no experience, as in *Eubank*, will be unlikely to navigate the intimidating claims process, which requires intellectual sophistication, and either notarization, witness identification, or photographic id. BOA was able to take advantage of unsophisticated class members in their original force-placing of insurance; BOA is counting on the same consumers to be unsophisticated and for the vast majority of them to fail to fill out a claim form. And this analysis assumes that class members' time is worthless: if it takes a class member $100 of time to make a $200 claim, the settlement is not worth $200 to that class member.

If we assume the outside maximum of a 7% claims rate, there will be under $16 million of claims, and class counsel will receive a majority of the benefit. Anything less than that—and there will assuredly be fewer claims than that—and the settlement allocation is even more disproportionate. As the parties acknowledge, BOA settled a similar suit in D. Oregon over force-placed insurance—what was the actual claims rate there? A settlement should not be approved when the allocation is so disproportionate, and the segregated fund precludes reallocation. *Redman*; *Eubank*, *cf. also Dennis*, 697 F.3d at 868 (38.9% fee award "clearly excessive"). Naturally low claims rates are "[t]he reality" here, and mean that "this settlement benefits class counsel vastly more than it does the consumers who comprise the class." *Pampers*, 724 F.3d at 721. This Court should deny final approval until the settlement is restructured so that class counsel are no longer "the foremost beneficiaries of the settlement." *Baby Prods.*, 708 F.3d

at 179. As discussed below, the way to do that is to require reductions in attorneys' fees to revert to the class, rather than to the defendant, and require the parties to "delete" that "questionable provision." *Eubank*, 753 F.3d at 723; *accord Redman*.

### 2. The clear-sailing agreement

In addition to a discrepancy between fees and class benefit, the settlement contains *Bluetooth's* second warning sign of an unfair deal: a "clear sailing" agreement. 654 F.3d at 947. A clear sailing clause stipulates that attorney awards will not be contested by the defendant. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 525; *Childs v. United Life Ins. Co.,* No. 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14 & n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger*, 925 F.2d at 524; *accord Bluetooth*, 654 F.3d at 948; *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 n.4 (11th Cir. 1999) (taking note of the controversy but refusing to opine on the propriety of clear-sailing agreements where settlement approval itself was not challenged on appeal); *Vought*, 901 F. Supp. 2d at 1100-01; *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011). *Accord Redman*.

*Bluetooth*'s second indication of an unfair fee-driven settlement is present.

### 3. The "kicker" / segregated fee fund

Not only does the settlement contain a "clear sailing" provision forbidding defendant from challenging the fee amount, but there is a "kicker" providing that any reduction in the fee award reverts to the defendant, rather than the class. The settlement agreement effectuates this by stipulating that fees will be considered separate and apart from class relief. As *Redman* notes, a clear-sailing clause combined with a segregated fund unfairly shifts litigation risk from class

counsel to the class. This is the third red flag pinpointed by *Bluetooth*: when the "parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947. This "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Id.* at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.* In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel—and when it does so, the class will benefit from the surplus.

Under the proposed settlement, however, if the Court awards less than the $16 million fee that defendant has already agreed to pay to class counsel, the defendant will be the only beneficiary. Because of the "economic reality that a settling defendant is concerned only with its total liability," this settlement is therefore worse for the class than a traditional common fund. *Pampers*, 724 F.3d at 717 (internal quotation omitted). In effect, the parties have prevented the Court from returning the fees and class relief to natural equilibrium. Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se* unethical). At a minimum, clear-sailing in conjunction with fee segregation is a red flag of a self-serving settlement that merits justification: why was this negotiated in such a manner as to make the class worse off? *Bluetooth*; *Redman*; *Eubank*.

The $16 million attorney allowance is a "concrete and indisputable" part of the settlement, and the fact that it is shielded from the class is inherently unfair. *Pampers*, 724 F.3d at 721. No settlement should be approved until the parties agree to modify the settlement so that any reduction in the proposed fee award reverts to the class.

This settlement must be rejected as unduly preferencing class counsel over class members.

> **D.  In the alternative to denying settlement approval, the Court should limit counsel's fees to a reasonable percentage of the amounts actually claimed and avoid windfalls in great excess of lodestar.**

In the event that the Court overrules Hall's fairness objections, and reaches the question of what counsel award is reasonable under Rule 23(h), Hall asks the Court to substantially reduce the award from that which is sought. It should bear in mind the background principle that "[w]hen the class attorneys succeed in reaping a golden harvest of fees in a case involving a relatively small recovery, the judicial system and the legal profession are disparaged." *Piambino II*, 757 F.2d at 1144 (internal quotation omitted). "[T]he practice of awarding attorneys' fees is one that has been delicate, embarrassing and disturbing for the courts. This embarrassment is rooted in the fact that the bitterest complaints about the legal profession from laymen are directed at the windfall fees and featherbedding that lawyers have managed to perpetuate through their influence with the judiciary." *Id.* (internal quotations, brackets and ellipses omitted). So, "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so. *Id.* (internal quotation omitted). As applied to this case, and some class action practices today, this admonition is prescient.

To minimize the likelihood of unreasonable fee awards, the law of this Circuit requires the use of the percentage-of-recovery method in common fund cases. *See, e.g., Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (abuse of discretion to use lodestar rather than percentage-of-recovery method of awarding fees, but lodestar is still permissible in fee-shifting statute cases). This Circuit has adopted the 25% benchmark prevalent in much of the nation: "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case, as opposed to the lodestar hourly fee used in statutory fee awards."

*Id.* at 775. The court may adjust the benchmark upward or downward,[1] but it "should articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based." 946 F.2d at 775.

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." Advisory Committee Notes on 2003 Amendments to Rule 23. As a fiduciary for the class, the Court maintains a duty of keen oversight of all settlement proceedings. *See supra* §II. Regardless of whether the settlement is structured as a pure common fund, "review of the attorneys' fees component of a settlement agreement is . . . an essential part of its role as guardian of the interests of class members. To properly fulfill its Rule 23(e) duty, the district court must not cursorily approve the attorney's fees provision of a class settlement or delegate that duty to the parties." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998) (constructive common fund); *GM Trucks*, 55 F.3d 768, 819-20 (requiring "a thorough judicial review of fee applications ... in all class action settlements" because "'a defendant is interested only in disposing of the total claim asserted against it'" and "'the allocation between the class payment and the attorneys' fees is of little or no interest to the defense'") (constructive common fund).

Percentage of recovery is still preferable to lodestar even though this settlement is structured as a constructive common fund, rather than a pure common fund. *GM Trucks*, 55 F.3d

---

[1] The 12 factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) are "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases." But no matter how much play these factors are given, the rule is that 85%-98% of the cash recovery or nearly 50% of the entire settlement value is far above the permitted "upper limit." *Camden I Condominium Ass'n*, 946 F.2d at 774-75.

at 821 ("[T]he court should probably use the percentage of recovery rather than the lodestar method as the primary determinant.... [P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."). "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." Federal Judicial Center, *Manual for Complex Litigation* § 21.7 (4th ed. 2004).

A fee award needs to be attuned to the result actually achieved for the class, to the money the settlement actually puts in class members' hands. *See, e.g., Baby Prods.*, 708 F.3d at 179. If this Court endorses a rule that class counsel should be indifferent between a settlement that awards cash directly to class members and a settlement with a restrictive claims process where less than 2% of the class will find it worthwhile to make claims, the parties will always agree to the more burdensome claims process that ensures class counsel extracts the maximum amount of fees and defendants pay the minimum amount of money to settle the case, and the unnamed class members will be left in the cold.

And for this reason the Advisory Committee Notes counsel that the "fundamental focus is the result actually achieved for class members" and advise "defer[ring] some portion of the fee award until actual payouts to the class are known." Notes of Advisory Committee on 2003 Amendments to Rule 23(h); *accord Baby Prods.*, 708 F.3d at 179. Even before Rule 23(h), courts deferred or staggered fees just so, to account for success or failure of the claims process. *E.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1283-84 (S.D. Ohio 1996), *aff'd Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).

Admittedly, some courts that have awarded fees on a percentage-of-recovery basis have made this calculation on the basis of the entire fund, not just the amount of the fund that is

claimed by the class. *E.g., Boeing v. Van Gemert*, 444 U.S. 572 (1980); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999), *cert. denied* 530 U.S. 1223 (2000).

Nonetheless, this Court should find *Boeing* and *Waters* inapplicable for at least two reasons. **First,** they were superseded by the 2003 amendments to Federal Rule of Civil Procedure 23, which created Rule 23(h), and the passage of the Class Action Fairness Act in 2005 (28 U.S.C. §1711 *et seq.*). *See* Samuel Isaacharoff, *The Governance Problem in Aggregate Litigation*, 81 FORDHAM L. REV. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually "prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members"). The new rules reflect common-sense intuitions: attorneys' fees should be tied directly to what clients receive, and permitting a class member to fill out a claim form in order to receive a check simply is not equivalent to getting money to that class member directly.

Speculative, maximized estimates are not the appropriate measure of benefit. *Baby Prods.*, 708 F.3d at 179 n.13 ("[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees."); Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2004) ("In cases involving a claims procedure…, the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims. Rather the fee should be based only on the benefits actually delivered."); *see also Pampers*, 724 F.3d at 721 (rejecting settlement-value "assumptions…premised upon a fictive world"); *Redman.*

A class member is not indifferent between a $244 million common fund that pays $228 million to the class and what we have here: a supposed overall monetary value of $228 million that will eventually yield less than $16 million (and likely less than half of that) than to the class. *See Int'l Precious Metals Corp. v. Waters,* 530 U.S. 1223 (2000) (O'Connor, J) (respecting denial of certiorari but noting that fund settlements that allow attorney fees to be based upon the total fund may "potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class" and, in turn, "could encourage the filing of needless lawsuits").

**Second,** even before Rule 23(h), *Boeing* and *Waters* never had application where "no money was paid into escrow or any other account" and each member of the class has no claim to a set piece of the "lump-sum judgment." *Strong v. BellSouth Telcoms.*, 137 F.3d 844, 852 (5th Cir. 1998); *Waters*, 190 F.3d at 1296 ("[U]nlike the case at bar, *Strong* never established a "common fund" from which money would be drawn. In contrast, the parties here established that $ 40 million was the fund upon which the amount of the individual claimants' awards would be based.") (internal citation to *Strong* omitted). Given that there is no litigated judgment here, no pure common fund, and no "mathematically ascertainable" maximum payout, even before Rule 23(h) and the Class Action Fairness Act, *Boeing* and *Waters* would have had no application here.[2]

The other reason fees should be reduced here is because they obviously demonstrate a gigantic multiplier, and thus a gigantic windfall if a lodestar cross-check were performed. *Bluetooth*. Lodestar alone guarantees partners in a leveraged law firm millions of dollars a year of income. Thus, a lodestar award without a multiplier is presumptively correct except in extraordinary circumstances. *Perdue v. Kenny A*, 559 U.S. 542 (2010). Class counsel faced next to no risk here: nearly every one of these cases has settled with an eight-digit fee paid to class counsel (and much less to the class due to the abuse of the claims-made process). The windfall and lack of risk is demonstrated by the fact that class counsel never mentions its lodestar once (or even the word "lodestar") in its fee motion—all they say is that they spent "many" hours. Clearly, if they disclosed how many hours is "many," (and how many of them were spent on the no-risk proposition once settlement was in the cards), class counsel would be receiving thousands of dollars an hour, an amount that would shock the conscience—otherwise, they would provide the hours spent and the resulting blended rate. The absence shows that they are scared to do so, and the court should demand and scrutinize those figures.

---

[2] If this Court determines that *Boeing* is still good law and is applicable here, Hall wishes to preserve that issue for appeal: he believes that it has been legislatively superseded and that it should be judicially reversed to the extent it is not.

Make no mistake though, a mere reduction of fees is a distant second-best solution to rejecting the settlement entirely, because it allows for the reversion of monies that the defendant was willing to cede to the class. As *Bluetooth* said, there is "no apparent reason" for that. 654 F.3d at 949.

For these reasons, the settlement should not be approved. At a minimum, fees must be reduced.

DATED:  September 29, 2014

Respectfully submitted,

/s/Santiago A. Cueto
Santiago A. Cueto
Cueto Law Group
4000 Ponce de Leon Blvd., Suite 470
Coral Gables, Florida  33146
Telephone:    (305) 777-0377
Facsimile:    (305) 777-0449
Email:  Sc@cuetolawgroup.com

Attorneys for Objectors/Class Members

## Certificate of Service

The undersigned certifies that today he filed the foregoing objection and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing. The undersigned further certifies he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Objection and associated exhibits upon the following.

Adam M. Moskowitz
Kozyak, Tropin, & Throckmorton, P.A.
2525 Ponce de Leon Blvd.,
9th Floor
Coral Gables, FL 33134

David L. Permut
Goodwin Procter, LLP
901 New York Ave., N.W.
Washington, D.C. 20001

Robyn C. Quattrone
BuckleySandler LLP
1250 24th Street, NW
Suite 700
Washington, DC 20037

/s/Santiago A. Cueto_____
Santiago A. Cueto