**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-22700-CV-Moreno/Otazo-Reyes**

FILED by _SAS_ D.C.

OCT 06 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

CHERYL HALL, *et al.*, on behalf of
themselves and all others similarly situated,

                         Plaintiffs,

v.

BANK OF AMERICA, N.A., individually and
as successor by merger to BAC HOME
LOANS SERVICING, *et al.*,

                         Defendants.

**OBJECTIONS AND MEMORANDUM IN SUPPORT OF THE OBJECTIONS BY
JEFFREY SANDERSON AND RAYAR JOHNSON TO THE PROPOSED
<u>SETTLEMENT, AND NOTICE OF INTENTION TO APPEAR</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INFORMATION ABOUT OBJECTORS REQUIRED BY CLASS ACTION NOTICE ............. v

INTRODUCTION .......................................................................................................... 1

THE OBJECTIONS ........................................................................................................ 2

   1. The Parties Have Failed to Provide Important Information to
     Support the Proposed Settlement and the Settlement Class ................................ 2

   2. The "Claims-Made" Nature Of The Settlement Is Unreasonable And
     Inappropriate Given The Information Readily Available To Defendants
     And Will Result In The Vast Majority Of Class Members Receiving
     Nothing In Exchange For The Complete Release of Valid Claims .................... 4

   3. The Claim Form Unnecessarily Impedes Recovery,
     Especially Given The Information In Defendants' Possession ......................... 8

   4. The Claims Process Is Intentionally Designed To Assure That Most Of
     The Settlement Class Will Receive No Recovery But The Settlement Will
     Extinguish Their Valuable Claims ............................................................... 10

   5. The Settlement Is Unfair Because It Requires Objections And Opt-Outs Before
     The Parties Have Filed Their Supporting Papers Detailing The Claims Received
     and The Amount Of The Final Payout .......................................................... 11

   6. The Settlement Is Unfair Because It Seeks Final Approval Even Before The Claims
     Deadline ................................................................................................. 11

   7. The Release Should Only Be Effective Against Class Members Whose Claims Are
     Paid ....................................................................................................... 12

   8. The Settlement is Unfair Because The Opt Out And Objection Periods Are Too
     Short And Improperly Restrict Each Class Member's Right To Challenge The
     Settlement And To Pursue Existing Cases ..................................................... 13

   9. Although The Notice And The Preliminary Approval Order Define The Class
     To Include All Borrowers Who Have Been Force Placed, The Claim Form
     Improperly Limits The Class By Excluding Borrowers Who Have Filed A
     Chapter 7 Bankruptcy Petition As Well As Those Whose Mortgage Has Been
     "Compromised Or Discharged In Bankruptcy" ............................................. 14

   10. The Claim Form is Unfair and Unduly Complex ........................................... 15

11. The Parties Should Provide the Required Data and Information About The Value Of The Injunctive Relief Before The Deadline For Objections And Before The Final Approval Hearing...................................................................................15

12. The Injunctive Relief Provision Purports To Impose Obligations And Eliminate Practices Already Addressed Under Regulations And Other Settlements ...................................................................................................................... 16

13. Sanderson and Johnson Object To The Court Awarding Attorneys' Fees And Expenses Before The Parties Specify How Much Defendants Actually Will Pay Under The Settlement....................................................................................17

14. There Is No Adequate Representative in This Case for the Tennessee Class of Borrowers...............................................................................................18

CONCLUSION........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Page(s)**

*Acosta v. Trans Union, LLC,*
   243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................ 7

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
   662 F.3d 913 (7th Cir. 2011) ............................................................................ 5

*De Leon v. Bank of Am., N.A. (USA),*
   No. 09-cv-1251-ORL-28, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012) ...................... 5, 6, 12

*Ellsworth v. U.S. Bank,*
   No. C 12-02506 LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ......................................... 18

*Eubank v. Pella Corp.,*
   753 F.3d 718 (7th Cir. 2014) .................................................................. passim

*Ferrington v. McAfee, Inc.,*
   No. 10-cv-01455, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ............................. 12

*Goldberger v. Integrated Res., Inc.,*
   209 F.3d 43 (2d Cir. 2000) ................................................................. 17

*Gooden v. SunTrust Mortg., Inc.,*
   No. 2:11-CV-02595-JAM-DAD, 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013) ..................... 18

*Gustafson v. BAC Home Loans Servicing, LP,*
   294 F.R.D. 529 (C.D. Cal. 2013) ............................................................... 19

*In Re Checking Account Overdraft Litig.,*
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....................................................... 7

*Lane v. Wells Fargo Bank, N.A.,*
   No. C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ...................... 18

*Masters v. Wilhelmina Model Agency, Inc.,*
   473 F.3d 423 (2d Cir. 2007) .................................................................. 17

*McDaniel v. County of Schenectady,*
   595 F.3d 411 (2d Cir. 2010) .................................................................. 17

*Sylvester v. CIGNA Corp.,*
   369 F. Supp. 2d 34 (D. Me. 2005) ........................................................ 3, 7

**Statutes**                                                                                                                                                    **Page(s)**

The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*............................................ 9

**Other Authorities**

Fannie Mae, *Servicing Guide Announcement SVC-2013-27* (Dec. 18, 2013) .............................. 16

Federal Housing Finance Agency, No. 2013-05 Lender Placed Insurance, Terms and
     Conditions.................................................................................................................................. 16

Freddie Mac, *Bulletin* (Dec. 18, 2013) ..................................................................................... 16

*Managing Class Action Litig.: A Pocket Guide for Judges,* FED. JUD. CTR. (3d. ed. 2010) ...... 6

**Regulations**

12 C.F.R. § 1024.17(i) (2012).................................................................................................. 9

12 C.F.R. § 1024.37(g) (West 2014)........................................................................................ 16

NYDFS Proposed, 11 NYCRR 227 (Insurance Regulation 202), Regulation of Force-Placed
     Insurance ................................................................................................................................. 17

**INFORMATION ABOUT OBJECTORS REQUIRED BY CLASS ACTION NOTICE**

a)   The Case Name and Number:

*Hall, et al. v. Bank of America, N.A., et al.*, No. 1:12-cv-22700-FAM (S.D. Fla.).

b)   The Objectors' names, addresses, and telephone numbers:

    1.   <u>Jeffrey Sanderson</u>

        113 Paige Park Lane
        Goodlettsville, TN 37072
        (615) 474-[redacted and will be provided by counsel below if necessary]

    2.   <u>Rayar Johnson</u>

        20 JR Merrill Road
        Buckatunna, MS 39322
        (601) 344-[redacted and will be provided by counsel below if necessary]

        Represented by Counsel:

        Stephen J. Fearon, Jr.
        SQUITIERI & FEARON, LLP
        32 East 57th Street, 12th Floor
        New York, New York 10022
        Tel:    (212) 421-6492
        Fax:   (212) 421-6553
        stephen@sfclasslaw.com

c)   The basis for the objections:

Detailed below.

d)   A statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel.

Objectors Jeffrey Sanderson and Rayar Johnson will appear by counsel.

## INTRODUCTION

This is the type of claims-made settlement that courts and commentators frequently warn about. It promises large attorneys' fees to class counsel in exchange for a broad release but will provide very little to the Class. Most class members will receive nothing. To accomplish this, the parties have used a claims process that limits the amount Defendants will pay to the Class.

Although Plaintiffs tout the settlement as providing more than $228 million in benefits to the class,[1] there is nothing to substantiate that figure and the parties have failed to provide the Court with the details about how much Defendants actually will pay to the Class to settle these claims. They have not provided the Court with the information necessary to determine that the settlement is fair. For example, how much in force placed premiums did Defendants charge Settlement Class members during the Class Period? Of the 1,069,039 Settlement Class members,[2] how many have submitted claims for settlement proceeds? What is the actual dollar amount that Defendants will pay to the Settlement Class? Is that amount anywhere close to the $228 million in benefits that the parties suggest this settlement is worth? What percentage of estimated damages is the actual recovery?

Until the parties come forward with proof demonstrating the adequacy and fairness of the settlement and the need for a claims-made process, the Court should deny the motion for final approval as well as the related request for attorneys' fees and costs.

\* \* \*

---

[1] Plaintiffs' Motion for Final Approval of Class Action Settlement, Application for Service Awards, Class Counsel's Application for Attorneys' Fees and Expenses, and Incorporated Memorandum of Law ("Plaintiffs' Mot. for Final Approval") at 1 [ECF No. 403].
[2] Plaintiffs' Mot. for Final Approval at 1.

## THE OBJECTIONS

Jeffrey Sanderson ("Sanderson"), a plaintiff in a similar class action against Defendant Bank of America, N.A. ("Bank of America") brought on behalf of a Tennessee class,[3] and Rayar Johnson ("Johnson"; collectively with Sanderson, "Objectors") object to the proposed settlement and the related relief sought by the parties and urge the Court to reject the settlement and the related relief sought by the parties. Objectors are members of the Settlement Class and request that the Court require the parties to answer the questions set forth in this Objection because many of those answers will reveal that this settlement is unfair and not approvable in its current form.

**1.      The Parties Have Failed to Provide Important Information to Support the Proposed Settlement and the Settlement Class**

There are so many unanswered questions about this proposed settlement that it would be inappropriate to approve it now, before the parties have provided the details necessary for the Court to properly assess whether the settlement is fair and reasonable under Rule 23. These fundamental questions go to the heart of the claims and to the fairness (or unfairness) of the proposed settlement. For example: how much in force placed premiums did Defendants charge Settlement Class members during the Class Period? Of the 1,069,039 Settlement Class members, how many have submitted claims for settlement proceeds? What is the actual dollar amount that Defendants will pay to the Settlement Class? Is that amount anywhere close to the $228 million in benefits that the parties suggest this settlement is worth? What percentage of estimated damages is the actual recovery? When did Defendants begin receiving kickbacks for force placing insurance on borrowers and when did they end that practice? Was that period the same for all states? Why does the Claim Form prevent recovery by Settlement Class Members who have filed for bankruptcy protection when the Settlement Agreement and the Court's Preliminary Approval Order include

---

[3] *Sanderson v. Bank of America, N.A., et al.*, No. 3:14-cv-00068-JTN-JEG (M.D. Tenn.).

them within the Settlement Class?

The Court will not have this crucial information by the time of the Final Approval Hearing because the parties have designed the Settlement in a way that extends the claims period beyond the date for the Final Approval hearing. Although this Court has previously approved settlements that use a similar process, this method has been criticized by other courts because it deprives the district court of meaningful information at the final approval stage. *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (criticizing a settlement and reversing the final approval where the district court did not have the benefit of the claims information before the final approval hearing) ("Not only did the settlement agreement not quantify the benefits to the class members, but the judge approved it before the deadline for filing claims.").

Plaintiffs boast that the settlement requires Defendants to pay $228 million in monetary benefits upon the submission of claims by class members.[4] This statement, however, conveniently fails to mention that claims-made settlements "regularly yield response rates of 10 percent or less." *See Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 53 (D. Me. 2005). Indeed, it appears Defendants' and Plaintiffs' counsel calculated the $228 million by assuming a 100% response rate. The parties have thus far failed to tell the Court the actual dollar value of the claims that Defendants will pay to members of the Settlement Class.

The Court should not approve this Settlement before the parties have provided the details necessary for the Court to properly assess whether the Settlement is fair and reasonable under Rule 23. For example, the parties should support their motion for final approval with answers to the following questions:

1. When did Defendants begin force placing hazard insurance? (The parties should provide this information by state and by year.)

---

[4] Plaintiffs' Mot. for Final Approval at 1.

2. Did Defendants at some point stop the force placed practices that are the subject of this action (particularly the kickback and commission practices)? If so, when did they stop those practices?

3. Were there any gaps in the data that prevented the parties from identifying Settlement Class Members for any portion of the Settlement Class Period or any state?

4. What is the breakdown of the number of Class Members by year and state?

5. What is the "net written premium" for each year of the Class Period broken down by number of policies and state?

6. How many settlement claim forms have Class Members submitted, itemized by state?

7. How much will Defendants *actually* pay under this settlement to Class members in each state?

8. How many claims (by state) will Defendants pay as a result of this proposed Settlement?

9. Which portions of the Injunctive Relief (Settlement Agreement at ¶¶ 4.2-4.5 [ECF No. 376-1]) did Defendants agree to solely as a result of this proposed settlement?

10. What is the percentage of Settlement Class Members whose loans have been paid in full?

11. What is the percentage of Settlement Class Members whose accounts are active and non-delinquent?

12. What is the expected claims rate for the Settlement?

The parties should provide this information before the Final Approval hearing because without it the Court will not be able to determine whether the Settlement is fair or whether the request for fees and expenses is reasonable.

**2.    The "Claims-Made" Nature Of The Settlement Is Unreasonable And Inappropriate Given The Information Readily Available To Defendants And Will Result In The Vast Majority Of Class Members Receiving Nothing In Exchange For The Complete Release of Valid Claims**

The $228 million settlement amount is wholly illusory given the strict "claims-made" settlement structure and the absence of any common fund under the settlement. Claims-made settlements like this have come under significant fire lately because they often return little to

4

class members who must submit a claim form to seek benefits. Here, the proposed class notice and claims procedure is so biased in favor of Defendants that the only guarantee with this settlement is that Defendants will erase enormous liability to the Settlement Class in exchange for agreeing to pay $16 million in fees and costs to Plaintiffs' attorneys and some *undetermined* amount to the Class. The ultimate payout to the Class will be far less than $228 million and will be a fraction of the improper premiums Defendants charged Class members for force-placed insurance.

This is exactly the type of troublesome claims-made settlement that courts have so often cautioned against because of its very real potential for abuse. As Judge Posner recently wrote for the Court of Appeals for the Seventh Circuit, "we and other courts have often remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." *Eubank*, 753 F.3d at 720 (citing *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011)).

Courts reject proposed settlements where "[t]he settlement amount considered in the light of the Settlement Agreement as a whole raises the possibility that there was some collusion." *De Leon v. Bank of Am., N.A. (USA)*, No. 09-cv-1251-ORL-28, 2012 WL 2568142, at *14 (M.D. Fla. Apr. 20, 2012) *report and recommendation adopted*, 2012 WL 2543586 (M.D. Fla. July 2, 2012);[5] *accord Eubank*, 753 F.3d at 726-27 (reversing the final approval of a claims-made

---

[5] The "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" produced by the Federal Judicial Center found online at www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf (last

settlement where "[c]lass counsel sold out the class").

When asked to evaluate proposed settlements that include many of the same features as the proposed settlement here, other district courts have declined to approve them. For instance, in *De Leon* the court reasoned that one factor that militated against granting preliminary approval was that while the proposed settlement was for an amount "up to $10,000,000," the total payment to all proposed class members could be a fraction of that and was unlikely to exceed $2,800,000. 2012 WL 2568142, at *14. The court was troubled by the relatively small amount of the actual payment compared with the broad release and the relatively large attorneys' fee. *Id.* at *15 ("Defendant also had an incentive to work with Plaintiffs' counsel to maximize their possible fee award because the Settlement Agreement will extinguish a vast array of claims that might have been brought against Defendant by class members who fail to opt-out of the class."). Those same concerns apply here.

In a case where the borrowers are precisely known, requiring class members to submit a claim form is an unreasonable and inappropriate obstacle to recovery that will most assuredly lead to the great majority of class members not receiving any monetary relief. *See Managing Class Action Litig.: A Pocket Guide for Judges,* FED. JUD. CTR. (3d. ed. 2010), p. 30 ("If the claims process deters class members from filing claims, the settlement may have less value to the class than the parties assert. . . . Avoid imposing unnecessary hurdles on potential claimants. First, consider whether a claims process is necessary at all. The defendant may already have the data it needs to automatically pay the claims of at least a portion of class members who do not opt

---

visited September 24, 2014) (the "FJC Guide") lists factors that a court should consider when deciding whether or not a proposed notice and claims process is adequate. The FJC Guide specifically counsels district court judges to consider, *inter alia*: whether there is "unbiased evidence supporting the notice plan is adequate;" "is a claims process necessary?;" or will it serve as a "choke" on the total amount paid to class members; and "Does the claims process avoid steps that deliberately filter valid claims." FJC Guide at 6. When viewed through this spectrum, Plaintiffs' notice and claims process is unreasonable and unfair.

out."). Here, the parties admit that they have the necessary information to automatically pay the claims of the Settlement Class. Plaintiffs' Mot. for Final Approval at 14. Indeed, the Settlement Agreement provides that the Bank of America Defendants *will* review their loan servicing records for each and every Class member who returns a valid Claim Form in order to determine, *inter alia*, whether the claimant is eligible to receive compensation and in what amount. Settlement Agreement at 30-33 (¶ 7.3). Accordingly, the parties have failed to demonstrate that a "claims-made" settlement is necessary or fair for the entire class.

Defendants are no doubt aware of the historically low claims rate in "claims-made" settlements and can be certain that their ultimate pay-out if this settlement is approved will be just a fraction of the proffered settlement value of approximately $228 million. *See Sylvester*, 369 F. Supp. 2d at 53 (""Claims made' settlements regularly yield response rates of 10 percent or less"); *In Re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 & n.14 (S.D. Fla. 2011) (approving a class settlement where class members automatically received the benefit and noting that "[t]he absence of a claims-made process further supports the conclusion that the settlement is reasonable"); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390-92 (C.D. Cal. 2007) (denying preliminary approval and finding that "much of what was attainable will go unpaid as a result of the claims-made process).

Recent empirical evidence bears this out. For example, Plaintiff's Counsel proudly points to *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233-RNS (S.D. Fla.) as an achievement, but it was anything but. *Williams* involved a "claims-made" settlement for a Florida class of Wells Fargo borrowers with force-placed hazard insurance. The publicized settlement value was approximately $19.25 million with class members entitled to a return of 25% of their force-

placed premiums—more than double (and sometimes quadruple) the relief provided here.[6] In *Williams*, the parties mailed Notice of the settlement to 36,464 Florida class members[7] but only 3,498 of them (9.59% of the class) submitted claim forms.[8] In light of the claims rate, the *Williams* defendants will pay out less than $2 million in claims.[9] In comparison, class counsel in *Williams*—including some of the same attorneys proposing the settlement here—received $5,480,000 in fees and costs, almost three times the amount that the defendants paid to the settlement class. *See Williams*, ECF Nos. 348, 356. This Court should prevent something similar from happening here on a nation-wide basis. If the Court requires the parties to answer the questions that the Objectors set forth above, the Court will quickly see that this settlement is unfair.

### 3.   The Claim Form Unnecessarily Impedes Recovery, Especially Given The Information In Defendants' Possession

The claims-made process is particularly inappropriate in this case because Defendants have the information available to them to automatically process the claims of the Settlement Class members. In fact, in connection with the notice that the parties disseminated, the parties have already identified each of the 1,069,039 class members. *See* Settlement Agreement at 25-29 (¶ 6); Plaintiffs' Mot. for Final Approval at 6-7 ("The Settlement Administrator . . . obtained 1,069,039 class member records from the Defendants, including the current or last-known names, mailing addresses, and LPI policy numbers for all persons meeting the class definition."). Thus, Defendants already have the information necessary to identify the Settlement Class members and there is no legitimate reason to require a claim form. This is especially true

---

[6] Class members who submit a timely and valid Claim Form stand to receive only 5%, 6.5%, or 11% of the net written premiums on the force-placed insurance. Settlement Agreement at 22-23 (¶ 4.6.1).

[7] *Williams*, ECF No. 354-2, Ex. B ¶ 6.

[8] There were also 120 late claim forms received. *Id.* ¶ 15. The net result is that over 30,000 Florida residents had their claims extinguished and received *nothing* in return.

[9] This assumes claims of roughly equal size, calculated as 9.59% of $19.25 million, which equals $1,846,075. Notably, the claims rate was less than 10%. *Williams*, ECF No. 354-2, Ex. B ¶ 10.

because this case is brought against lenders and/or servicers who are required by law to maintain the data and separately account for amounts paid out of escrow accounts for taxes, *insurance premiums*, and other charges. 12 C.F.R. § 1024.17(i) (2012) (requiring servicers to "submit an annual escrow account statement to [borrowers] within 30 days of the completion of the escrow account computation year" including "[t]he total amount paid out of the escrow account during the same period for taxes, *insurance premiums*, and other charges (*as separately identified*)") (emphasis added).

Plaintiffs attempt to justify the claims-made process by asserting that "Bank of America's systems cannot determine such information on a class-wide basis"—necessitating manual review. *See* Plaintiffs' Mot. for Final Approval at 14. This reasoning, however, fails to consider that the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, required servicing Defendants to maintain such information. *See* 12 C.F.R. § 1024.17. Further, Plaintiffs improperly assert, in conclusory fashion, that any manual review would take "a significant amount of time and manpower" without specifically analyzing Bank of America's record keeping system. Plaintiffs' Mot. for Final Approval at 14 & n.11. Indeed, Plaintiffs merely cite to a declaration in *Williams* claiming that manual review of *Wells Fargo Bank's system* would take between a "few hours" and five hours. *See id.* at 13-14 & n.11.

Moreover, the information requested by the Claim Form is not the type that a defendant would need to process claims in a class action *or cure Bank of America's improper record keeping*. For example, the Claim Form requests contact information but does not request that the borrowers provide information about the *amount* of force-placed premiums. *See* Settlement Agreement, Exhibit ("Ex.") C. Indeed, it appears likely that Plaintiffs struck a sweetheart deal with Defendants which drastically limited the number of accounts Defendants

must review[10] and the amount Defendants *actually pay* to the Settlement Class in exchange for large attorneys' fees. Defendants have the records required to automatically pay the Class, they simply wish to drastically limit the amount paid out and how many records they have to review.

Accordingly, it is unreasonable to use a claims-made process *here* and limit the Class' *actual recovery* solely because of Defendants' improper record keeping. Sanderson and Johnson object to the claims-made nature of the settlement for all class members as unreasonable, unnecessary, unjustified, and as intended only to shield Defendants from making substantial payments to the Settlement Class.

**4.      The Claims Process Is Intentionally Designed To Assure That Most Of The Settlement Class Will Receive No Recovery But The Settlement Will Extinguish Their Valuable Claims**

In June, the Seventh Circuit Court of Appeals rejected a claims-made settlement in the Pella windows case and raised concerns similar to those that Objectors raise here. *Eubank*, 753 F.3d 718. The Seventh Circuit (in a decision written by Judge Posner) noted that "from the selfish standpoint of class counsel and the defendant . . . the optimal settlement is one modest in overall amount but heavily tilted toward attorneys' fees." *Id.* at 720. There is an "incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve as settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." *Id.* (citations omitted).

Sanderson and Johnson object to this settlement to help protect the Settlement Class against a settlement that shares some of the same dangerous defects identified by the appellate

---

[10] "The Bank of America *shall review the loan servicing records for Class Members* who return a valid Claim Form to determine: . . . ." Settlement Agreement at 31 (¶ 7.3.2) (emphasis added).

court in *Eubank*. The settlement here would provide $16 million in fees to class counsel but there is a serious question about how much it will provide to class members. Indeed, if we assume a response rate of 10%, the Settlement Class will receive approximately $22.8 million while Plaintiffs' counsel receives <u>well over two-thirds of that amount (a 70.18% fee)</u>.[11] This Court should not approve the settlement at least until the parties provide meaningful answers to the questions raised by Objectors concerning this settlement.

5. **The Settlement Is Unfair Because It Requires Objections And Opt-Outs Before The Parties Have Filed Their Supporting Papers Detailing The Claims Received and The Amount Of The Final Payout**

Sanderson and Johnson object to the Settlement's requirement that Class members opt-out or object to the settlement and the request for fees and expenses before releasing the details they need in order to make an informed decision about whether to object, opt-out, or remain in the settlement.

6. **The Settlement Is Unfair Because It Seeks Final Approval Even Before The Claims Deadline**

Sanderson and Johnson object to the Settlement to the extent that the deadline to submit claims will not run until January 27, 2015—well after the October 29, 2014 Final Approval Hearing. *Hall v. Bank of America Settlement,* EPIQ SYSTEMS, INC., https://www.hallsettlementinfo.com/en (last visited Sept. 24, 2014). In other words, the Court will not and cannot know the number of claims that will be paid before the Final Approval Hearing. *Eubank*, 753 F.3d at 723-24 (reversing the final approval where the district court did not have the benefit of the claims information before the final approval hearing) ("Not only did the settlement agreement not quantify the benefits to the class members, but the judge approved it before the deadline for filing claims.").

---

[11] $22.8 million is arrived at by assuming that each class member has an equal claim to the $228 million.

Without such critical information, the Court should deny final approval.[12]

**7.     The Release Should Only Be Effective Against Class Members Whose Claims Are Paid**

In class actions, defendants frequently push for claims-made settlements because they know that the claims rate will be extremely low, meaning the defendants will only have to pay the settlement proceeds to a small fraction of the class members. Defendants get a broad release with a small payout. Additionally, Defendants know that very few potential class members will opt-out. As Judge Posner in *Eubank* recently explained, "Opting out of a class action is very rare. Virtually no one who receives notice that he is a member of a class in a class action suit opts out. He doesn't know what he could do as an opt-out. He's unlikely to hire a lawyer to litigate over a window [the case involved defective windows]." *Eubank*, 753 F.3d at 728. Defendants therefore have an incentive to push through a claims-made settlement that will result in a small number of claims, very few opt-outs, and a broad release. In *Eubank*, the appellate court rejected that approach and reversed the district court's order approving the settlement.

This Court should reject this settlement for similar reasons. Alternatively, if the Court approves the settlement it should enter the release only against Class members who have been paid the settlement proceeds. That is, if Defendants pay a class member settlement proceeds, that class member's claims are released, but, if Defendants do not pay the Settlement proceeds to a class member, that person is not subject to the release. Approving the release only against class members who have been paid levels the playing field and protects the class from overreaching by Defendants. It also accounts for the fact that very few class members would take the steps

---

[12] *See De Leon*, 2012 WL 2568142, at * 15 and 2012 WL 2543586 (adopting Mag. J Rec. & Op.) (denying approval of claims-made settlement with, among other things, a predictably low rate of claims); *Ferrington v. McAfee, Inc.*, No. 10-cv-01455, 2012 WL 1156399, at *13 (N.D. Cal. Apr. 6, 2012) (denying final approval of claims-made settlement involving "a low rate of claims participation, a small claims pay out, [and] a disproportionately large attorneys' fee award").

necessary to exclude themselves from the settlement, especially where the opt-out period is so short.[13]

**8.    The Settlement is Unfair Because The Opt Out And Objection Periods Are Too Short And Improperly Restrict Each Class Member's Right To Challenge The Settlement And To Pursue Existing Cases**

The Settlement provides 1,069,039 class members with only 60 to 63 days from the mailing of the Notice to opt out or object,[14] a period that is far too short given the important rights that would be released by this settlement and the Settlement Agreement's own recognition that some class members may not receive the notice. *See* Settlement Agreement at 25-26.

The deadline for objections also is too short because it comes before the parties have even submitted any evidence about the amount of the actual payout to class members from the settlement.

Some class members have been lulled into not objecting and not opting-out by the glowing representations that class members could receive $228 million in refunds of force-placed insurance premiums.[15] Class Members should have a period of time to object to the settlement or opt-out after the parties reveal how much Defendants actually will pay to the class. It is premature to ask Class Members to opt-out or object to the Settlement before the parties have provided the truth about the settlement amount.

* * *

---

[13] Plaintiffs boast that "only 87 valid [opt-outs], representing approximately .007% of the settlement class" were received by September 8, 2014 and only one objection was filed with the Court as of September 12, 2014. "[A] low opt-out rate[, however,] is no evidence that a class action settlement [is] 'fair' to the members of the class." *Eubank*, 753 F.3d at 728.

[14] *See* Plaintiffs' Mot. for Final Approval, Ex. B (Declaration of Ricky Borges) at 2, Ex. A at 6.

[15] Settlement Agreement, Ex. A at 7 (Mail Notice).

13

9.    **Although The Notice And The Preliminary Approval Order Define The Class To Include All Borrowers Who Have Been Force Placed, The Claim Form Improperly Limits The Class By Excluding Borrowers Who Have Filed A Chapter 7 Bankruptcy Petition As Well As Those Whose Mortgage Has Been "Compromised Or Discharged In Bankruptcy"**

In the Preliminary Approval Order, this Court tentatively approved the Settlement Class. ECF No. 385 at 2-3 (¶ 4). The Court's Order never excluded borrowers who had filed for bankruptcy or borrowers whose debt was "compromised". Similarly, the Settlement Agreement, *see* Settlement Agreement at 14-15 (¶ 3.1), and the Class Notice never limited the class to exclude borrowers who filed for bankruptcy or those whose debt was "compromised". *See* Settlement Agreement, Ex. A, at 5-6 (¶ 5).

Yet in the Claim Form, the parties have unilaterally excluded from recovery borrowers who have filed a Chapter 7 petition, have had their mortgage discharged in bankruptcy, or had their debt "compromised." *See* Settlement Agreement, Ex. C at 6 (in which the parties require the Class member to declare "under penalty of perjury" that "[s]ince the issuance of the LPI Policy, I have not filed a Petition under Chapter 7 of the United States Bankruptcy Code, and my indebtedness on my residence secured by my Deed of Trust of [sic] Mortgage has not been compromised or discharged in bankruptcy.").

It is unfair for the parties to define the Class differently in the Claim Form than in the Settlement Agreement and the Preliminary Approval Order. The parties' use of language in the Claim Form preventing those borrowers from recovering is troubling because Defendants' force placed insurance practices often caused borrowers to experience significant financial difficulties, including the need to file for bankruptcy protection or to "compromise" or modify their loans. The parties' limiting language in the Claim Form raises a host of questions that create doubt about the effect of the settlement, such as:

14

value of the injunctive relief. They should provide that information now, not after the time for objections has already passed. It is unfair to require Class members to object to this portion of the settlement when there is nothing in the record substantiating or quantifying a dollar value of the agreed injunctive relief.[16]

**12.   The Injunctive Relief Provision Purports To Impose Obligations And Eliminate Practices Already Addressed Under Regulations And Other Settlements**

The Settlement purports to deliver additional benefits through an injunctive relief provision that enjoins or mandates specified practices that were at issue in the litigation. *See* Settlement Agreement at 20-22 (¶¶ 4.2-4.5). This relief, however, is not the product of *this* settlement. Instead, Defendants are already obligated by the terms of settlements they have previously entered in other force-placed insurance litigation or in settlements with state attorneys general and insurance departments, new federal regulations, regulatory guidelines, and proposed NYDFS regulations to refrain from the practices purportedly prohibited by this settlement and to comply with the guidelines that this settlement purports to establish. *See, e.g.*, Consent Judgment [ECF No. 11] at 3 (¶ 2), A-37 to A-40 *U.S., et al. v. Bank of Am. Corp., et al.*, No. 1:12-cv-00361-RMC (D.D.C.) (placing restrictions on Bank of America's use of force-placed insurance in the future and mandating that any such force-placed insurance must, among other things, be purchased at a *commercially reasonable price*);[17] 12 C.F.R. § 1024.37(g) (West 2014) (effective date January 10, 2014); *see also* Federal Housing Finance Agency, No. 2013-05 Lender Placed Insurance, Terms and Conditions; Freddie Mac, *Bulletin* (Dec. 18, 2013); Fannie Mae, *Servicing Guide Announcement SVC-2013-27* (Dec. 18, 2013); NYDFS Proposed, 11 NYCRR 227 (Insurance Regulation 202), Regulation

---

[16] Because the parties have not quantified the value of the injunctive relief, Sanderson and Johnson reserve the right to object to the claimed value of that relief if the parties eventually place a value on it.

[17] This agreement is also available at http://www.nationalmortgagesettlement.com/.

of Force-Placed Insurance.

Accordingly, the value of the injunctive relief provided under the settlement is severely, if not entirely, diminished by the reality that virtually all of the changes identified in the settlement as additional consideration were already set in motion or required pursuant to prior government regulations, servicing guidelines, and other settlement agreements.

### 13. Sanderson and Johnson Object To The Court Awarding Attorneys' Fees And Expenses Before The Parties Specify How Much Defendants Actually Will Pay Under The Settlement

The settlement provides for attorneys' fees of up to $16,000,000. Settlement Agreement at 47-49 (¶ 15). The Court should not award attorneys' fees or expenses until the parties provide details about how much Defendants *actually* will pay to the Settlement Class and until the parties provide the other information that Objectors seek. Without knowing the actual amount that the settlement will provide to class members, or the actual claims rate, the Court cannot assess the reasonableness of the fee and expense request. It has no context for whether or not the fee request is reasonable when compared to the actual recovery. For instance, if we assume—which is all we can do at this point because the parties have failed to provide the necessary data—a response rate of 10%, Plaintiffs' Counsel will receive an attorneys' fee that amounts to well over two-thirds of the hypothetical actual recovery (a 70.18% fee). *See supra* Part 4.

It is also premature to consider the fee request until Plaintiffs' Counsel submits its lodestar information so that the Court can cross-check the fee application against the actual time that counsel devoted to the case.[18]

---

[18] *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (recognizing that courts may apply "the lodestar method as a cross check on the reasonableness of the requested percentage")(internal quotations marks omitted); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (opining that "the lodestar remains useful as a baseline even if the percentage method is eventually chosen" and "encourag[ing] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage").

It is unfair for the settlement to require Class members to object before Plaintiffs' counsel have filed their lodestar information and other papers supporting their fee and expense request.

**14.     There Is No Adequate Representative in This Case for the Tennessee Class of Borrowers**

Sanderson objects to the Settlement and certification of the Settlement Class because there was no Plaintiff who could adequately represent him and the proposed class of Tennessee borrowers. Plaintiffs' conduct before the settlement supports this. Plaintiffs filed for a motion to certify a national class only on their *federal* claims[19] and sought certification for Florida- and New York-only classes on their state claims because Plaintiffs knew that courts are unlikely to certify a national class on state law claims that vary and even clash. That did not stop Plaintiffs' counsel, however, from negotiating away the entire nation's claims in exchange for a massive attorneys' fees payout of $16 million. The fate of the claims by Sanderson and other Tennessee borrowers should not depend upon borrowers from out-of-state with no connection to Tennessee.[20] Courts have recently refused to certify similar nationwide classes in force placed insurance cases. *See, e.g., Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 WL 3187410, at *3-4 (N.D. Cal. June 21, 2013) (holding, in a similar force placed insurance class action, that "variations in state law preclude[d] certification of a nationwide class"); *Ellsworth v. U.S. Bank*, No. C 12-02506 LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014) (force placed insurance case in which the district court certified a class but excluded from class certification borrowers from Ohio, where an objector lived); *Gooden v. SunTrust Mortg., Inc.*, No. 2:11-CV-02595-JAM-DAD, 2013 WL 6499250, at *8 (E.D. Cal. Dec. 11, 2013) ("Because it is unclear

---

[19] Plaintiffs' Motion for Class Certification is currently under seal. However, Bank of America's opposition to Plaintiffs' Motion for Class Certification indicates that Plaintiffs sought national certification only on its federal claims and sought certification only for Florida and New York classes for their state-law claims. *See* Bank of America's & Banc of America Ins. Servs., Inc.'s Opp. to Plaintiffs' Mot. for Class Cert. at 10, 23 [ECF No. 318].
[20] The named plaintiffs in the Second Amended Complaint hail from Arkansas, Florida, Louisiana, and New York. Corrected Second Amended Class Action Complaint at 8 (¶¶ 13-20) [ECF No. 227-1].

how the variations in state law would be dealt with, the Court finds that Plaintiffs have not met their burden to establish the commonality and predominance requirements of Rule 23(a)(1) and (b)(3) for the Nationwide Classes for Flood and Hazard Insurance."); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 541-50 (C.D. Cal. 2013) (denying certification of a nationwide class in the force placed context where common law claims required applying different state laws).

## CONCLUSION

The Objectors ask the Court to deny final approval of the Settlement and deny the fee and expense request.

Dated: September 29, 2014

Respectfully submitted,

By: /s/ Stephen J. Fearon, Jr.
        Stephen J. Fearon, Jr.
**SQUITIERI & FEARON, LLP**
32 East 57th Street, 12th Floor
New York, New York 10022
Tel:   (212) 421-6492
Fax:   (212) 421-6553
stephen@sfclasslaw.com

*Attorneys for Objectors*

Gregory F. Coleman
**GREG COLEMAN LAW PC**
550 West Main Avenue, Suite 600
Knoxville, Tennessee 37902
Tel:   (865) 247-0080
Fax:   (865) 522-0049
greg@gregcolemanlaw.com

*Attorneys for Sanderson*

Dated: September 29, 2014

Jeffrey Sanderson

Dated: September 29, 2014

_____
Rayar Johnson

21

## CERTIFICATE OF SERVICE

The undersigned certifies that today he filed the foregoing objection and notice of intention to appear on ECF which will send electronic notification to all attorneys registered for ECF-filing. The undersigned further certifies that he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Objection and Notice of Intention to Appear upon the following:

Clerk of the United States District Court
Southern District of Florida
400 North Miami, 8th Floor
Miami, FL 33128

*Clerk of the Court*

Adam M. Moskowitz
Kozyak, Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134

*Class Counsel*

David L. Permut
Goodwin Procter, LLP
901 New York Ave. NW
Washington, DC 20001

*Counsel for The Bank of America Defendants*

Robyn C. Quattrone
BuckleySandler LLP
1250 24th Street, NW, Suite 700
Washington, DC 20037

*Counsel for QBE Defendants*

DATED: September 29, 2014                    /s/ Stephen J. Fearon, Jr.
                                             Stephen J. Fearon, Jr.

22

UNITED STATES POSTAGE

PITNEY BOWES

$ 002.090

02 1P
0003934232   SEP 29   2014
MAILED FROM ZIP CODE 10022

First Class Mail
ComBasPrice

REC'D by _____ D.C.

OCT 0 7 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI



UNDELIVERED

USPS

By _____

UTTIERI & FEARON, LLP
STREET, 12th FLOOR
NEW YORK 10022

Clerk of the United States District Court
Southern District of Florida
400 North Miami, 8th Floor
Miami, FL 33128