## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:12-cv-22700-FAM

CHERYL HALL, *et al.*, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

BANK OF AMERICA, N.A., individually and
as successor by merger to BAC HOME LOANS
SERVICING, *et al.*,

      Defendants.

_____/

## ORDER GRANTING FINAL APPROVAL TO
## CLASS ACTION SETTLEMENT

On June 18, 2014, this Court granted preliminary approval to the proposed class action

settlement set forth in the Settlement Agreement between Plaintiffs Marla Lugo, John and

Jacquelyn Totura, Renata Circeo, and John Loudon, on behalf of themselves and all members of

the Settlement Class, and Bank of America, N.A., in its own capacity and as successor by merger

to BAC Home Loans Servicing, LP, and Banc of America Insurance Services, Inc. (the "Bank of

America Defendants"); and Balboa Insurance Company, QBE FIRST Insurance Agency, Inc.,

and QBE Insurance Corporation (the "QBE Defendants").  The Court also provisionally certified

the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to

the members of the Settlement Class, and set a final approval hearing to take place on October

29, 2014.  The Court finds that the Class Notice substantially in the form approved by the Court

in its preliminary approval order was given in the manner ordered by the Court, constitutes the

best practicable notice, and was fair, reasonable, and adequate, and that the Parties have complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715.

On October 29, 2014, the Court held a duly noticed final approval hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate; (2) whether a judgment should be entered dismissing the Named Plaintiffs' Second Amended Complaint on the merits and with prejudice in favor of the Defendants and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; and (3) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel for the Settlement Class and whether and in what amount to award a Case Contribution Award to the Named Plaintiffs.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, and the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Approval Order and Final Judgment.[1]  Without in any way affecting the finality of this Final Order and Judgment, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Final Order and Judgment and for any other necessary purpose.

2.      The Court finds that the Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions.  There is no evidence of collusion. The Settlement Agreement was reached after the parties engaged in extensive litigation, including motions to dismiss, motions for summary judgment, and a motion for class

---

[1] A Final Judgment consistent with this Order will be entered forthwith.

certification.  Further, the settlement occurred only after the parties participated in a mediation that continued for a period of approximately six months.  *See* Declaration of Jonathan Marks, [D.E. 429] at ¶¶ 6-18.  Those efforts included numerous meetings and telephone conferences with the mediator, multiple written submissions, and the exchange and production of considerable additional discovery, including a substantial volume of electronic data. *Id.* at ¶¶ 9-17.  Counsel for the parties therefore were well positioned to evaluate the benefits of the Settlement Agreement, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.   And the settlement reached was "consistent with judgments [the mediator] reached on the strengths and weaknesses of the claims." *Id.* at ¶ 24.

3.      The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b) have been satisfied for settlement purposes for each Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Named Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Named Plaintiffs have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

4.      Pursuant to Fed. R. Civ. P. 23, this Court hereby finally certifies the Settlement Class, as identified in the Settlement Agreement, which shall consist of the following:

a.  All borrowers who had mortgage loans, home equity loans, and home equity lines of credit serviced by Bank of America, N.A. or BAC Home Loans Servicing, LP, (formerly known as Countrywide Home Loans Servicing, L.P.) who were charged a premium for lender-placed hazard insurance[2] coverage issued by Balboa Insurance Company, Meritplan Insurance Company, Newport Insurance Company, QBE Insurance Corporation, QBE Specialty Insurance Company, Praetorian Insurance Company, or one of their affiliates within the Class Period. Class Members will have[3] the right to opt out of the Settlement Agreement consistent with the terms of Fed. R. Civ. P. 23(b)(3).

b.  The "Settlement Class Period" shall be from January 1, 2008 through February 3, 2014.

c.  Excluded from the Class are: (i) individuals who are or were during the Class Period officers, directors, or employees of the Defendants or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers whose Lender-Placed Insurance Policy was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower; (iv) all borrowers who file a timely and proper request to be excluded from the Class; and (v) any borrowers who have settled or otherwise released any Lender-Placed Insurance claims, including but not limited to all borrowers who participated as settlement class members in *Farmer v. Bank of America, N.A. and BAC Home Loans Servicing, L.P.*, Civil No. 5:11-CV-00935-OLG (W.D. Tex.).

5.  The Court appoints the law firms of Kozyak, Tropin, & Throckmorton, P.A., Podhurst Orseck, P.A., and Harke Clasby & Bushman LLP as Class Counsel for the Settlement Class.

6.  The Court designates Named Plaintiffs Marla Lugo, John and Jacquelyn Totura, Renata Circeo, and John Loudon as the Class Representatives.

7.  The Court makes the following findings on notice to the Settlement Class:

(a)  The Court finds that the distribution of the Mail Notice, the creation of the IVR toll-free telephone number system with the ability to speak with a live settlement

---

[2] As used in this term sheet, "lender-placed hazard insurance" excludes flood, flood gap, and stand-alone wind insurance policies.

[3] The deadline for Class Members to submit opt-out requests was September 29, 2014.

4

representative, publication of the summary notice in USA Today, and creation of the Internet site, all as provided for in the Settlement Agreement and Preliminary Approval Order, (i) constituted the best practicable notice under the circumstances to Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.  This Court further finds that all notice requirements under the Class Action Fairness Act, 28 U.S.C. § 1715, have been properly complied with in connection with the Settlement, and that it has been more than ninety (90) days since the date, July 28, 2014, on which the notices required under the statute were served upon the appropriate state and federal officials.

(b)     The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Order and Judgment: (i) constitute the most effective and practicable notice of the Final Order and Judgment, the relief available to Settlement Class Members pursuant to the Final Order and Judgment, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.

8.     Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a class action settlement:  (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and duration of the litigation; (3) the stage of the proceedings at

5

which the settlement was achieved and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received." *Leverso* v. *South Trust Bank of Ala., N.A.,* 18 F.3d 1527, 1530, n.6 (11th Cir. 1994).

9.      There is no evidence that this settlement was the result of fraud or collusion.  *Cf. Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (reversing district court's approval due to the presence of "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for," including, inter alia, the lead class representative's "fatal conflicts of interest").[4] In the instant case, both the merits and class issues were heavily litigated before this Court.  In addition, as discussed above, the settlement was the result of a lengthy and arm's-length mediation process.  Accordingly, the first factor favors approval of the settlement.

10.      The second factor – the complexity, expense and duration of the litigation – also favors settlement approval.  This case was brought as a putative class action on behalf of in excess of one million borrowers.  Both the claims and defenses were complex.  Continuing to litigate these claims would have been time-consuming and expensive.  Indeed, even if plaintiffs were to prevail, class certification proceeding, a class trial and the appellate process could go on for years.  In contrast, the settlement provides immediate and substantial monetary and injunctive relief to the Settlement Class in an amount that could very well exceed the likely recovery at trial.  Accordingly, the second factor weighs in favor of approving the settlement.

---

[4] The Court in *Eubank* also noted the following "danger signs":

> [O]pposition by named plaintiffs; a provision requiring class members to risk recovering nothing by submitting their claims to arbitration, where the defendants had reserved defenses, in order to be eligible for any meaningful settlement distribution; an award of only coupons to a portion of the class; twelve- to thirteen-page claim forms requiring class members to submit "a slew of arcane data, including the "product identity stamp," "Unit ID Label," and purchase order number of the product at issue; and an unnecessarily complex settlement notice.

753 F.3d at 721.  Such danger signs are not present in the Settlement Agreement.

11.     The third factor involves the stage of the proceedings and the amount of discovery completed.  The undisputed evidence before the Court demonstrated that the parties engaged in significant discovery, merits briefing, and class certification motion practice, to be well-informed of the strengths and weaknesses of their claims and defenses.  Further, both before and during the mediation process, the parties exchanged additional discovery to allow Class Counsel to confirm certain aspects of the settlement and the value of the monetary relief that will be provided to the Settlement Class.  As a result, this factor also supports settlement approval.

12.     The fourth factor, the probability of the plaintiffs' success on the merits, weighs in favor of the settlement.  Plaintiffs' primary theory was that Defendants acted improperly by allegedly accepting commissions or below-cost services that they contended were kickbacks. But since this case was filed, a number of courts have dismissed such claims.  *See, e.g., Feaz v. Wells Fargo Bank, NA*, 745 F.3d at 1104-11 (11th Cir. 2014) (affirming dismissal of lender-placed insurance kickback claims); *Kolbe v. BAC Home Loans Serv., L.P.*, 738 F.3d 432 (1st Cir. 2013) (same); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013) (same); *DeCambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294 (W.D. Wis. Oct. 25, 2013) (dismissing similar claims based on the filed rate doctrine).  Moreover, most courts have denied class certification in lender-placed insurance cases, and none have certified a nationwide class.  *See, e.g., Gustafson v. BAC Home Loans Serv., L.P.*, 294 F.R.D 529 (C.D. Cal. 2013) (denying certification of a nationwide class); *Gooden v. SunTrust Mortg., Inc.*, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) (same), *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (same). While Plaintiffs' Class Counsel expressed confidence that it could distinguish these cases and prevail, as this Court has since ruled *see e.g. Hamilton v. SunTrust Mortg. In*c., No. 13-60749-CIV, 2014 U.S. Dist. LEXIS 41668 (S.D. Fla. Mar. 25, 2014) and *Persaud v. Bank of Am., N.A.*,

2014 U.S. Dist. LEXIS 120307(S.D. Fla. Aug. 27, 2014), it is obvious that the headwinds created by these decisions are significant. *See Saccoccio*, 297 F.R.D. at 693. Indeed, there exists a potential that the class could endure a long and expensive trial only to come away with nothing. *Id.* Significantly, none of the objectors disputed that these obstacles exist and are formidable. In light of the recovery to the class, as well as the significant litigation risk Plaintiffs faced absent settlement, the settlement is fair, reasonable and adequate.

13.     As to the range of possible recovery, the Court finds that the Settlement Agreement offers monetary relief to Class Members that will compensate them for a significant part of the allegedly inflated portion of the force-placed premiums that they either paid or were charged.     Significantly, none of the objectors offered any evidence to challenge the reasonableness of the percentage of premiums to be awarded to participating Class Members. The amount paid to Class Members is calculated from the entire premium, rather than the alleged "excess" or inflated portion of the premium.     As this Court reasoned in approving the comparable *Saccoccio* settlement, this relief "very likely exceeds what Plaintiffs could have won at trial." *Saccoccio*, 297 F.R.D. at 693

14.     The Court also finds that the significant injunctive relief provided under the Settlement Agreement is not illusory, but constitutes important changes that will help homeowners across the country. As a threshold matter, however, in light of the Settlement Agreement's delivery of significant monetary relief to the class members, the objectors' cavil about injunctive relief is of little moment. *See Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 698 (S.D. Fla. 2014) ("[M]ost obviously, the Varnes Objectors conveniently ignore that, in addition to the injunctive relief, Class Counsel has *also* returned monetary relief in the approximate amount of $300 million.").

15.    The provided injunctive relief guarantees the cessation of numerous activities that have been the subject of lender-placed cases, including prohibitions on: commissions, instituting captive reinsurance agreements, affiliated lender-placed insurance transactions, and other specific practices.  The Court notes the Defendants deny engaging in these practices. Nevertheless, the injunctive relief goes beyond these concessions, and the Defendants' asserted past performance could be altered in the absence of the agreed injunctive relief.  The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide.

16.    With respect to the last factor, the Court considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness.  Of the over 1,000,000 class members nationwide to whom notice was issued, there were nine objections filed on behalf of seventeen Class Members which equates to less than .0016% of the class. Moreover, not a single state attorney general or regulator submitted an objection to any provision of the Settlement Agreement.  Class Counsel fully supports the settlement, which they achieved only after arduous proceedings and negotiations.  There were significant obstacles to prevailing both on the merits and at class certification that support class counsel's conclusion that the settlement is in the best interest of the class.  Finally, the testimony of a respected and experienced mediator as to the fairness of the settlement and the mediation process is entitled to substantial weight.  The Court finds that such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness.

17.    The Court has carefully considered the arguments raised by all of the objectors, including regarding the claims-made structure of the settlement, the notice plan, the proposed fee

award, and the settlement's release, and they are hereby overruled. "'There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.'" *Saccoccio v. JPMorgan Chase Bank, NA.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) (quoting *Schulte v. Fifth Third Bank*, 805 Supp. 2d 560, 593 (N.D. Ill. 2011)); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.) at [D.E. 259] ("*Fladell*"); *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104 (S.D. Fla.) at [D.E. 182] ("*Diaz*"); *Hamilton v. SunTrust Mortgage*, No. 13-60749 (S.D. Fla.) at [D.E. 178]. Rather, the authority cited by the objectors merely holds that certain claims-made settlements, combined with other factors, could possibly be indicia of collusion. Here, however, the evidence is undisputed that this settlement was not the result of collusion. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (reversing district court's approval due to the presence of "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for," including the lead class representative's "fatal conflicts of interest" and opposition by named plaintiffs). Indeed, this Court already has found that the settlement is the result of arm's length negotiations, reflects the strengths and weaknesses of the plaintiffs' claims, and provides the class members with relief that no objector has specifically challenged.

18.      Moreover, the objectors' criticism of the claims-made structure "does not impact the fairness, reasonableness, or adequacy of the proposed settlement." *Casey v. Citibank*, N.A., 2014 WL 4120599, at *2 (N.D.N.Y. Aug. 21, 2014). "While a direct payment structure would obviously result in more, and possibly all, class members receiving a share of the [monetary relief in the] settlement, there is no reason to believe the defendants would agree to such terms," *Casey*, 2014 WL 4120599, at *2, and, in any event, the Court "does not have the authority to impose a preferred payment structure upon the settling parties." *Id.* at *3. And the Settlement

Agreement's claims process is needed for other reasons, including to ensure that only aggrieved individuals receive monetary relief and to reduce the risk of fraud, waste, and abuse that might arise from sending unsolicited checks to unverified addresses and recipients.

19.     Courts approving settlements in other force-placed insurance class actions, and state regulators settling borrowers' claims against the force-placed insurers that control the force-placed insurance market, have also concluded that a claims process is reasonable.  *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling objection to claims-made settlement based on evidence that that defendants could not determine which class members had paid on system-wide basis); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.) at [D.E. 259] (same); *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104 (S.D. Fla.) at [D.E. 182] (same); *Hamilton v. SunTrust Mortgage,* No. 13-60749 (S.D. Fla.) at [D.E. 178] (same); *Casey v. Citibank, N.A.,* No. 5:12-cv-820, 2014 U.S. Dist. LEXIS 118252 (N.D.N.Y. Aug. 21, 2014) (granting final approval of claims-made force-placed insurance settlement); *Consent Order, In the Matter of QBE Fin. Institution Risk Servs., Inc., QBE Ins. Corp., & QBE Holdings, Inc.* (N.Y.D.F.S. 2013), available at http://www.dfs.ny.gov/about/ea/ea_201304181_qbe.pdf.  Put simply, "criticism of the claims-made structure" does "not impact the fairness, reasonableness, or adequacy of the proposed settlement." *Casey*, 2014 WL 4120599, at *2.

20.     Where, as here, a claims-made process is a reasonable method for providing fair, prompt, and substantial relief to the class, requiring class members to file claim forms also maximizes the relief available to class members who opt to submit a claim. *Hamilton* at [D.E. 178].  A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims. *Id.*  What matters is the settlement's value to each class member – it is ultimately up to class members to participate or not.  Indeed, district courts routinely approve

11

reasonable claims-made settlements, including those involving lender-placed insurance where the notice provisions and the actual relief to class members is fair and reasonable. *Id.*; *see, e.g., Saccoccio*, 297 F.R.D. 683; *Williams,* No. 11-cv-21233 (D.E. 356) (claims-made settlement in lender-placed insurance class action was "in all respects fair, reasonable, and adequate"); *Casey,* 2014 U.S. Dist. LEXIS 118252; *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 201 (D.D.C. 2011) (approving claims-made settlement and observing that "a claims process is often used to ensure that money is fairly distributed for valid claims"); *Wahl v. Am. Sec. Ins. Co.,* No. C08-00555 (N.D. Cal.) (D.E. 189) (claims-made lender-placed insurance settlement was "entered into in good faith and … fair, reasonable, and adequate").

21.     The Court also rejects the objectors' argument that the Court cannot grant final approval without knowing the final number of claims that are submitted. This Settlement is fair, reasonable, and adequate independent of the number of claims filed. *See Saccoccio v. JPMorgan Chase Bank, N A*., 2014 WL 3738013 (S.D. Fla. July 28, 2014). But the claims process to date shows that the class has responded positively to the settlement   As of October 29, 2014, at least 45,000 claims had already been filed by class members who were either charged for or paid for lender placed coverage with thousands more of claims still being filed every week.  Given that the claims period does not expire until late January 2015, and based upon the claims filed in similar lender-placed insurance class settlements, a significant number of additional claims are expected, particularly from class members who are waiting to see if the settlement is finally approved.  District courts often grant final approval of class actions settlements before the final claims deadline. *See, e.g., Saccoccio* 297 F.R.D. at 696 (overruling this same objection because courts in this district have upheld settlements with low claims rates and because claims deadline had not yet passed); *Hamilton* at [D.E. 178] (approving claims made settlement where final

claims deadline was not until after final fairness hearing); *Casey v. Citibank, N.A.*, No. 12-cv-00820, 2014 WL 4120599, at *2 (N.D.N.Y. Aug. 21, 2014) (number of claims made is "irrelevant to the underlying issue; to wit, whether the proposed settlement agreement is fair, reasonable, and adequate"); *Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) (rejecting notion that court "should wait until the claims are in, and it is determined how much was actually paid to the class before determining a reasonable percentage for class counsel"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007) (court need not wait for final claims data to approve).

22.    Provided that notice is adequate, the relief made available to class members is fair, and the settlement is otherwise fair and reasonable, the number of claims submitted at any particular time is not a relevant factor in evaluating the fairness, reasonableness, or adequacy of the settlement. *See, e.g., Hamilton* at [D.E. 178] ("a low claims rate at this stage does not compel the conclusion that the settlement is not 'fair, reasonable, or adequate.' ...[because] ... [t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is "fair, reasonable, and adequate," not whether the class decides to actually take advantage of the opportunity provided."); *Perez v. Asurion Corp.,* 501 F.Supp.2d at 1377 (approval of settlement with 1.1% of class members returned claims forms); *Moore v. Verizon Commc'n Inc.,* No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate). The Court agrees that "many factors affect response rates and this ratio should not be given great significance." *Date v. Sony Elecs., Inc.*, No. 07-15474-CIV, 2013 WL 3945981, at *10 (E.D. Mich. July 31, 2013). There may be many reasons or no reasons why class members decide to participate in a settlement, *e.g.*, a desire not to be involved in litigation, ideological disagreement with the justice

system, their individual experiences with lender-placed insurance, or sympathy for the defendant. Further, class members may not have paid lender-placed insurance charges and therefore elected to forego the opportunity to submit a Claim Form.  Whatever the underlying reason, that is a decision to be made by each class member.  Those decisions, however, do not affect whether the settlement provided to the Class is fair, adequate, and reasonable.

23.  The Court further finds that Notice and Claim Forms are not deficient but in fact more than reasonable. *See Saccoccio*, 297 F.R.D. at 697-98. The items some objectors describe as missing from the Notice (*e.g.*, "aggregate estimated damages suffered by the class") are not required by due process or the notice requirements set out in Fed. R. Civ. P. 23.  *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).  The approved Claim Form should take no more than a few minutes for the average class member to review and complete and requires the submission of no supporting materials such that would be required in an individual lawsuit. The Court finds that the Claim Form and Claim and Notice Process were fair and reasonable.

24.  The final objection concerns the requested attorneys' fees and the demand that the Court wait until the close of the claims period and the value of the claims actually paid to consider Class Counsel's request for attorney's fees and expenses.  This objection is contrary to the law in the Eleventh Circuit and is thus overruled.  Attorneys representing a class action are entitled to an attorney's fee based upon the total benefits obtained in or provided by a class settlement, regardless of the amounts eventually collected by the Class.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 676 (1980); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir. 1999); *Saccoccio*, 297 F.R.D. 683, 695 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Casey v.*

14

*Citibank, N.A.*, No. 12-cv-00820 (N.D.N.Y.) at (D.E. 223*); David v. Am. Suzuki Motor Corp.*,

No. 08–CV–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable

benefits may be treated as a common fund to which a percentage fee may be awarded, even if the

fee is separately paid by the defendant).

25.    In the Eleventh Circuit, attorneys' fees shall be based upon a reasonable

percentage of the fund established for the benefit of the class. *See Camden I Condo. Ass'n v.*

*Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F.

Supp. 2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333

(S.D. Fla. 2001).   The percentage applies to the total benefits provided, even where the actual

payments to the class following a claims process is lower. *Waters*, 190 F. 3d at 1295-96.

26.    "[F]ederal district courts across the country have, in the class action settlement

context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in

so-called 'mega-fund' cases." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210

(S.D. Fla. 2006) (awarding fees of 31½% of settlement fund).   Here, the requested percentage is

easily within or below the range provided by the Eleventh Circuit.   *See Camden I,* 946 F. 2d at

774 (20%–50% of the value provided); *David*, 2010 WL 1628362 at *8 n.15 (20%-50% of

common fund is "the customary fee in class actions that result in substantial benefits").   As the

Eleventh Circuit stated in *Camden I*: "[A]n upper limit of 50% of the fund may be stated as a

general rule, although even larger percentages have been awarded."   946 F.2d at 774-75.   The

fees requested here, 7% of the overall monetary benefit made available, is thus well in line with

the bulk of the fee awards in class action litigation.   *See, e.g., Saccoccio,* 297 F.R.D. at 695

(awarding nearly identical 6.7% of total fund available to be claimed*); Terazosin Hydrochloride*

*Antitrust Litig.,* No. 99–1317–MDL–Seitz (S.D. Fla. Apr. 19, 2005) (awarding fees of 33-1/3 %);

*In re Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (35.5% of settlement); *Hamilton* at [D.E. 178] (awarding 16% of the total monetary benefits provided).

27.    The Court takes note of the expert report provided by former federal judge Mr. Thomas Scott who states that he reviewed all of the pleadings, law and materials in this case and he believes that the requested fees is fair and reasonable. (D.E. 403-4).

28.    The Court further takes note that the parties negotiated Class Counsel's fees only after the all other terms of the Settlement Agreement were finalized. The fees will not be taken from the amount made available to the Class and these indicia of fairness extinguish any suggestion of collusion.

29.    Accordingly, pursuant to Fed. R. Civ. P. 23(h), the Court hereby awards Class Counsel for the Settlement Class Attorneys' Fees and Expenses in the amount of $16,000,000.00 pursuant to the terms of the Settlement Agreement. This amounts to 7% of the total monetary benefits made available to the class. The percentage is lower when the value of the significant injunctive relief is also considered. *See Waters*, 190 F.3d at 1295-96.

30.    The Court also awards three case contribution awards in the amount of $5,000.00 each to Marla Lugo, John and Jacquelyn Totura (jointly), and Renata Circeo and John Loudon (jointly) payable pursuant to the terms of the Settlement Agreement.

31.    In light of these findings, the Settlement Agreement is finally approved as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The terms and provisions of the Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members. The Settlement Agreement confers

substantial benefits upon the Settlement Class members, is in the public interest, and will provide the Parties with repose from litigation.

32.   The Parties are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.   The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits maintained by the Plaintiffs and all other Settlement Class Members, as well as their heirs, executors and administrators, successors, and assigns.

33.   The Releases, which are set forth in Section 10 of the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Order and Judgment; and the Released Persons (as that term is defined below and in the Settlement Agreement) are forever released, relinquished, and discharged by the Releasing Persons (as that term is defined below and in the Settlement Agreement) from all Released Claims (as that term is defined below and in the Settlement Agreement).

(a)   Release and Waiver Definitions

(i)   "The Bank of America Defendants" mean Bank of America Bank, N.A, its predecessors and successors, and all of their affiliates, including Banc of America Insurance Services, Inc.;

(ii)   "The QBE Defendants" mean Balboa Insurance Company, QBE FIRST Insurance Agency, Inc. and QBE Insurance Corporation;

(iv)   "Defendants" mean all named defendants in the Hall Litigation, including the Bank of America Defendants and the QBE Defendants;

17

(v)     "Lender-Placed" means the placement of hazard insurance  pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by the Bank of America Defendants to cover a borrower's failure to maintain the required insurance coverage on the residential property securing the loan;

(vi)    "Lender-Placed Insurance Policy" means a lender-placed residential hazard insurance policy;

(vii)   "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons;

(viii)  "Released Claims" means all claims, actions, causes of action, suit, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, demands, and any other forms of liability released pursuant to this Final Order and Judgment and Section 10 of the Settlement Agreement;

(v)     "Released Persons" means:  (a) Defendants and each of their respective past or present divisions, parents, subsidiaries, predecessors, investors, parent companies, acquired companies, and affiliated companies (which shall include any person or entity which controls, is controlled by, or is under common control with any such party), including, but not limited to, the Bank of America Defendants, the QBE Defendants, and any direct or indirect subsidiary of any of Defendants and each of their respective past or present divisions, parents, subsidiaries, investors, parent companies, and affiliated companies, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities; and (b) any other insurance carriers that issued or may have issued hazard Lender-Placed Insurance to any Settlement Class Member for the Bank of America Defendants and/or for any of the Bank of America Defendants' past or present divisions, parents, subsidiaries,

18

predecessors, investors, parent companies, acquired companies, and affiliated companies (which shall include any person or entity which controls, is controlled by, or is under common control with any such party), including but not limited to any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

(vi) "Releasing Persons" means Named Plaintiffs, all Settlement Class Members who do not properly and timely opt out of the Settlement, and their respective family members, heirs, administrators, successors, and assigns.

(vii) "Settling Parties" means, collectively, Defendants, Named Plaintiffs, all Settlement Class Members, and all Releasing Persons.

(b) <u>Released Claims of Settlement Class</u>. Upon the Final Settlement Date, each member of the Settlement Class, other than the Named Plaintiffs, shall, by operation of the Final Order and Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have on or before the Final Settlement Date or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning Lender-Placed

Insurance Policies placed or charged by the Bank of America Defendants during the Class Period.

        (i)     The Release stated in Paragraph 12(b) above shall include, but not be limited to, all claims related to charges for the Bank of America Defendants' placement of Lender-Placed Insurance Policies during the Class Period; any reinsurance agreements involving the Bank of America Defendants concerning Lender-Placed Insurance Policies; the relationship, whether contractual or otherwise, between the Bank of America Defendants and the QBE Defendants regarding Lender-Placed Insurance, including, but not limited to, the procuring, underwriting, placement, tracking, or costs of Lender-Placed Insurance Policies; the amount, duration, and alleged excessiveness of any Lender-Placed Insurance Policies placed or charged by the Bank of America Defendants; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any Lender-Placed Insurance Policies placed or charged by the Bank of America Defendants; any alleged "tying" arrangement involving the Bank of America Defendants and Lender-Placed Insurance; any alleged breach of fiduciary duty by the Bank of America Defendants concerning Lender-Placed Insurance Policies; any alleged tortious interference by the QBE Defendants with mortgage contracts serviced by the Bank of America Defendants; the disclosure or non-disclosure of any payment, expenses, fees, charges, or feature pertaining to or under any Lender-Placed Insurance Policies placed or charged by the Bank of America Defendants; the receipt or non-disclosure of any benefit under any Lender-Placed Insurance Policies placed or charged by the Bank of America Defendants; the content, manner, or accuracy of any communications regarding the placement of any insurance policy by the Bank of America Defendants; and to the regulatory

approval or non-approval of any insurance policy, or the premium thereon, placed or charged by the Bank of America Defendants.

        (ii)     The Release in Paragraph 12(b) above shall not cover claims arising after the Final Settlement Date, or claims for benefits made under any Lender-Placed Insurance Policy placed or charged by the Bank of America Defendants.   Nothing in Paragraph 12(b) shall be deemed a release of any Settlement Class Member's respective rights and obligations under the Agreement.

        (iii)    Except to the extent that any such obligation is being released pursuant to Paragraph 12(b) above, this Final Order and Judgment shall not be deemed a release of Defendants from any existing obligation to any Settlement Class Member, other than Named Plaintiffs, under any loan, note, mortgage, or deed of trust.  This provision is not meant to and does not limit the Releases in this Final Oder and Judgment or in the Settlement Agreement.

        (c)     <u>Released Claims of Named Plaintiffs</u>.  Upon the Final Settlement Date, Named Plaintiffs, on behalf of themselves, their family members, heirs, guardians, assigns, executors, administrators, predecessors, and successors, hereby release and discharge the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that the Named Plaintiffs may have on or before the Final Settlement Date or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source.  In agreeing to this Release, Named Plaintiffs

explicitly acknowledged that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

(i)       The Release in Paragraph 12(c) above shall include, but not be limited to, all claims related to charges for the Bank of America Defendants' placement of Lender-Placed Insurance Policies; the relationship, whether contractual or otherwise, between the Bank of America Defendants and the QBE Defendants, regarding Lender-Placed Insurance, including, but not limited to, the procuring, underwriting, placement, tracking, or costs of Lender-Placed Insurance Policies; any reinsurance agreements involving the Bank of America Defendants related to Lender-Placed Insurance Policies; the amount, duration, and alleged excessiveness of any Lender-Placed Insurance Policies placed or charged by the Bank of America Defendants; payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any Lender-Placed Insurance Policies placed or charged by the Bank of America Defendants; any alleged "tying" arrangement involving the Bank of America Defendants and Lender-Placed Insurance; any alleged breach of fiduciary duty by the Bank of America Defendants concerning Lender-Placed Insurance Policies; any alleged tortious interference by the QBE Defendants with mortgage contracts serviced by the Bank of America Defendants, to the extent related to Lender-Placed Insurance; the disclosure or non-disclosure of any payment, expenses, fees, charges, or feature pertaining to or under any Lender-Placed Insurance Policies placed or charged by the Bank of America Defendants; the receipt or non-disclosure of any benefit under any Lender-Placed Insurance Policy placed or charged by the Bank of America Defendants; the content, manner, or accuracy of any communications regarding the placement of any Lender-Placed Insurance Policy by the Bank of America Defendants; and

the regulatory approval or non-approval of any Lender-Placed Insurance insurance policy, or the premium thereon, placed or charged by the Bank of America Defendants during the Class Period.

(ii)   The Release in Paragraph 12(c) above shall not cover claims arising after the Final Settlement Date or claims made under any Lender-Placed Insurance Policy placed or charged by the Bank of America Defendants.   Nothing in Paragraph 12(c) shall be deemed a release of Named Plaintiffs' respective rights and obligations under the Final Order and Judgment and the Settlement Agreement.

(d)   Without in any way limiting their scope, the Releases cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs, or any Settlement Class Members in connection with or related in any manner to this Action, the settlement of this Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in this Final Order and Judgment and the Settlement Agreement.

(e)   In connection with the foregoing Releases, the Named Plaintiffs and each Settlement Class Member expressly waived, and shall be deemed to have waived to the fullest extent permitted by law, any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Named Plaintiffs and each Settlement Class Member agreed that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent

they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released.   The Named Plaintiffs recognized, and each Settlement Class Member is deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true that, upon entry of this Final Judgment and Order, they fully, finally, and forever settle and release any and all claims covered by the Releases.

(f)     The Releases were bargained for and are a material element of the Settlement Agreement.

(g)     The Releases do not affect the rights of Settlement Class Members who timely and properly submitted a Request for Exclusion from the Settlement in accordance with the requirements of the Preliminary Approval Order and in Section 11 of the Settlement Agreement.

(h)     The administration and consummation of the Settlement as embodied in the Settlement Agreement shall be under the authority of the Court.   The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases.   The Court expressly retains jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

(i)     The Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out), and the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s).

(j)     The Releases shall not preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.   The Releases set

forth herein and in the Settlement Agreement are not intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained therein.

34.    All Settlement Class Members who did not timely exclude themselves from the Settlement Class are, from this day forward, hereby permanently barred and enjoined from directly or indirectly:  (i) filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in the Hall Litigation and/or the Released Claims (as that term is defined in the Settlement Agreement); or (ii) organizing any Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Claims.

35.    Promptly after the Final Settlement Date, Settlement Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by any Settlement Class Member in any other jurisdiction and that have been released pursuant to the Settlement Agreement and this Final Order and Judgment.

36.    Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Final Order and Judgment, nor any of its terms and provisions shall be:

(a)     offered by any person or received against the Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by the Defendants of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Hall Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

(b)     offered by any person or received against the Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Defendants or any other wrongdoing by the Defendants;

(c)     offered by any person or received against the Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding;

(d)     offered or received in evidence in any action or proceeding against any Party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases, or the Final Order and Judgment.

37.     This Final Order and Judgment and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by any Released Person (as that term is defined herein and the Settlement Agreement) to support a defense of *res judicata*, collateral

estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

38.     Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

39.     In the event that the Final Settlement Date does not occur, this Final Order and Judgment shall automatically be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void.

40.     This Action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against the Named Plaintiffs and all other Settlement Class Members, without fees or costs to any party except as otherwise provided herein.

41.     A final judgment consistent with this Order will be entered forthwith.


DONE and ORDERED in Chambers in Miami, Florida, this _____ day of

_____, 2014.

_____

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE